Raymond BERTRAND, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Robert DEVORE, et al., Plaintiff,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, et al., Defendant.

Civ. Nos. 81–838–RE, 81–1049–RE.

United States District Court,
D. Oregon.

Dec. 14, 1982.

Jonathan M. Hoffman, Martin, Bischoff, Templeton, Biggs & Ericsson, Portland, Or., for plaintiff Bertrand.

Marc D. Blackman, Ransom, Blackman & Simson, Portland, Or., for plaintiff Devore.

Elden Gish, Regional Atty., Portland, Or., for defendant.

REDDEN, Judge:

These are *de novo* proceedings brought pursuant to 7 U.S.C. § 2023. The suits are brought by the owners of two retail food stores, who challenge the action of the Food and Nutrition Service (FNS) in disqualifying them from participation in the federal food stamp program for stated periods of time, one year and six months, respectively. The store owners move for summary judgment on the grounds that the penalty periods of disqualification imposed by FNS for their alleged violations are excessive as a matter of law. I agree and remand the cases to the FNS for further action.

FACTS

Robert Devore owns the Good Food Store and Raymond Bertrand owns Ray's Groceries, both retail food stores in Bend and Portland, Oregon respectively. Both stores are qualified for participation in the federal food stamp redemption program. This means that they are allowed to accept food stamps in payment for grocery items which are "eligible." The items which are "eligible" are, in general, items which are eaten. Items which are not eaten, such as detergent, bubble bath, scrub pads, and so on, are not "eligible," and the cashiers at par-

ticipating stores are required to reject the proffer of food stamps to purchase such items. There are also certain items which, although eaten, are not "eligible." These include non-prescription drugs, beer and food which will be eaten on the premises. The FNS is charged with the duty of enforcing this program and does send undercover agents to food stores to determine whether the stores are enforcing the law and the various regulations and guidelines. If the cashier on duty accepts food stamps for the sale of ineligible products the FNS may charge the store with violating the guidelines and seek to disqualify it from participation in the food stamp program.

Undercover agents of FNS entered both stores and used food stamps to obtain bubble bath, detergent and beer. It is a fact undisputed in this case that both proprietors of these small, family-run stores were on vacation at the time of the visit from the FNS investigators. No one was "in charge" of the stores in the owners' absence other than the cashiers. One cashier at Ray's Groceries was the son of the owner, who does not usually work in the store, but was filling in during his parents' vacation. He was assisted by several teen-age friends. The cashiers at the Good Food Store were the regular cashiers.

## LAW

Disqualification of stores from the program is governed by the provisions of 7 C.F.R. § 278.6. These regulations, which have been duly promulgated, establish certain periods of disqualification for certain types of violations. In general, the penalty period is made longer if violations result from the fact that "it is the firm's policy to commit violations," *see* 7 C.F.R. § 278.-6(e)(3)(i), or if "ownership or management personnel of the firm have committed violations," *see* 7 C.F.R. § 278.6(e)(4), or if FNS has "specifically warned the firm that violations are occurring and of the possible consequences of violating the regulations," *see* 7 C.F.R. § 278.6(e)(3)(iii). Penalties range from a three-year disqualification from the program to a warning letter. 7 C.F.R. § 278.6(e). When FNS applies these regu-

lations and determines that a period of disqualification is appropriate, it is required to take the further step under the regulations of determining whether disqualification of the store will "cause hardship to food stamp households" because of their inability to secure foodstuffs from another store in the area which will redeem food stamps for "as large a variety of staple food items at comparable prices." 7 C.F.R. § 278.6(g).

## DISCUSSION

The regulations found at 7 C.F.R. § 278.6 are fair and reasonable. They have been duly promulgated and serve an important purpose in carefully and specifically limiting the discretion of FNS to impose a penalty. A most salutary feature of the regulations is that they establish an appropriate penalty for each case, depending upon the features of that case and the culpability of the store's owners or management.

The problem in these cases arises from the fact that the FNS has drawn up certain internal guidelines to deal with violations. The FNS applies these guidelines rather than the regulations promulgated by 7 C.F.R. § 278.6. For instance, FNS Instruction 744–9 purports to define the term "firm's policy to commit violations," in 7 C.F.R. § 278.6(e)(3)(i). These internal guidelines define "policy" such that FNS will consider that the "policy" of the store to violate the regulations will be established where *more than one cashier* allows the FNS undercover agents to buy ineligible products. "Policy" is also established under these guidelines if the owner's son or daughter is the violating cashier, provided that the son or daughter is "regularly involved in the operation of the store." The internal guidelines do not *define* the terms of 7 C.F.R. § 278.6; they purport to *amend* those regulations. In practice, FNS will send its undercover agents to a store at different times of day, so that different cashiers will be on duty. If two sympathetic cashiers are found, the FNS determines that it has demonstrated the "policy of the firm to commit violations." Then a much stiffer penalty may be applied, rather than a lesser penalty for violations resulting

from simple carelessness, poor supervision or ignorance of the program's eligibility criteria.

■ The FNS internal guidelines seem to amend the definition of "specific warning" contained in the regulations, in the guise of defining it. The FNS imposes a higher penalty when the store has been specifically warned that violations are occurring. However, the FNS regards it as a "specific warning" when they have sent a *form letter up to three years previously.* The form letter states that "violations may be occurring." It is sent to stores when a computer identifies that store as one having a high redemption rate. In the present cases, the stores received the form letters and contacted the FNS to explain that they felt their high redemption rates were due to an influx of low-income people into their areas or because of other demographic changes. The FNS appeared to accept the explanation, and for all that appears in the record, this is a correct explanation. Some years later, FNS undercover agents conducted their operations at the stores. There was a lapse between "warning" and investigation of 18 months in the case of Ray's Groceries and more than three years in the case of the Good Food Store. Such a stale "warning" is not the *specific* warning that violations *are* occurring which is required by 7 C.F.R. § 278.6, and may not be used by FNS to enhance the disqualification penalty. This is not the warning contemplated by the regulations, which is an indication from FNS that a store's practices *are* resulting in violations and a warning to the store to make changes in its operations. *Bowen v. Block,* 667 F.2d 445 (4th Cir.1982), cited by the government, is not to the contrary. There, the store owner received, only a few weeks before the violations in question, a letter from FNS detailing specific program abuses which had been found to be occurring. When another investigation a few weeks later disclosed more abuses, the warning letter could plainly be used to enhance the penalty. However, the FNS may not send out a "warning letter" to everyone involved in the program with redemption rate fluctuations, and then regard that as

the "specific warning" required by the regulations. *See Bruno's, Inc. v. United States,* 624 F.2d 592, 596 (5th Cir.1980). In neither of the present cases was the "warning" adequate, and therefore it may not be used to enhance the penalty.

■ In neither of these cases has the FNS established that it is the "policy of the firm to commit violations." This phrase can control when management or owners of the store, i.e., those who make policy or whose edicts or acts could be said to represent the official policy of the store, either commit the violations or acquiesce in their commission. The evidence in these cases is that cashiers, for whatever reason, allowed the FNS investigators to buy ineligible items. This may have been through ignorance on the part of the cashier; it may have been through sympathy with the patron; or it may have been a result of the fact that on at least one occasion there were long lines behind the FNS investigator and the cashier was in a rush to make the sale. Such lapses do not establish "policy" to commit violations. None of the cashiers was in charge of the store on a regular basis. If they had been, the demonstration by FNS must rise above that which would be consistent with mere carelessness. In this regard I am guided by the careful analysis contained in *Bruno's, Inc. v. United States, supra,* at 595–596 (60-day suspension from program by FNS arbitrary and capricious where store had done all it could to prevent violations). I adopt the Fifth Circuit's analysis on the "policy" issue in these cases and rule, as it did, that the FNS' demonstration of "policy" is not the "policy" envisioned by 7 C.F.R. § 278.6.

■ Since neither "policy" nor "warning" may be used to enhance the penalty in these cases, I rule as a matter of law that the maximum penalty which FNS may impose is the 30-day disqualification of 7 C.F.R. § 278.6(e)(6)(i). However, this penalty, as opposed to a warning letter, may only be imposed if the management of these stores was guilty of "carelessness or poor supervision." *Id.* There is no finding in the record on this issue, nor would it be possible for me to conclude in a vacuum that the fact that owners of the stores were on vacation dem-

onstrated conclusively that they were careless and their stores poorly supervised. I will therefore remand the case to FNS to determine whether the violations in these cases resulted from "carelessness or poor supervision," and whether the violations were "too limited to warrant a disqualification," such that a warning letter would be the appropriate penalty, *see* 7 C.F.R. § 278.-6(e)(7). In the event that the FNS concludes that the 30-day disqualification is the appropriate penalty, it must also make a finding as to whether the resulting hardship to food stamp households would preclude disqualification and make a monetary penalty more appropriate. In the case of the Good Food Store, the FNS should make a specific finding on the issue of whether its disqualification will result in hardship to food stamp households because it is allegedly the only source in its area for organic produce. While the food stamp program need not provide any particular diet other than a nutritionally sound one, it may be that certain food stamp households would refuse to eat chemically-treated produce and be unable to locate organically grown produce in the area. If hunger or malnutrition could result, this might constitute the "hardship" to food stamp households envisioned by 7 C.F.R. § 278.6(g). This might require the imposition of a monetary penalty in lieu of disqualification, but this is a matter for finding on remand.