**Candelario LAMBOY: Joaquin Suarez; Pablo Lamboy and Antonio Lamboy, T/A L & S Tropical Food Products, Inc.**

v.

**UNITED STATES of America.**

Civ. A. No. 83–5747.

United States District Court, E.D. Pennsylvania.

Feb. 27, 1985.

John Matrullo, Philadelphia, Pa., for plaintiffs.

Stanley Weinberg, Alexander Ewing Jr., Asst. U.S. Attys., Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

This is a civil action to obtain a *de novo* review of a Department of Agriculture Food and Nutrition Service ("FNS") decision disqualifying L & S Tropical Food Products, Inc. ("L & S") from participating in the Food Stamp Program for a period of one (1) year. This court has jurisdiction of this matter under 7 U.S.C. § 2023(a).

L & S is a Pennsylvania corporation organized in August, 1980. The shareholders of the corporation are Candelario Lamboy, President of the corporation, his brother Antonio (Tony) Lamboy, and Joaquin (Jack) Suarez, Secretary/Treasurer of the corporation. The corporation owns and operates a store in a warehouse-type building at 401 West Columbia Avenue in Philadelphia, Pennsylvania. Jack Suarez and Tony Lamboy operate the business on a daily basis. Mr. Suarez is generally responsible for listing merchandise on invoices, pricing items and accepting payment for merchandise. In August and September, 1982, the store had two employees, Pablo Ayala and his son Edwin Ayala, who are related to Tony Lamboy.

On October 19, 1981, Joseph Devereaux, Food Stamp Specialist, visited the store and spoke with Mr. Suarez. Devereaux told Suarez that the store had an unusually high rate of coupon redemptions and warned him that the store might be violating the Food Stamp Program in that regard. Devereaux reviewed the Good Stamp Regulations, including those regarding the sale of ineligible items.

The October 19, 1981 visit was followed by a letter dated October 21, 1981 from the FNS. The letter summarized the October 19 visit, enclosed a copy of the Food Stamp Regulations, warned that "[v]iolations may lead to your disqualification," and stated that all store employees must "know the program regulations and adhere to them."

On or about March 31, 1982, the FNS issued a Request for Investigation ("RFI") of L & S based upon the unusually large volume of food stamp transactions at the store. The FNS had also received an anonymous report that this store was accepting food stamps from retailers.

Clifford Rank undertook the investigation for the Government and hired Carmen Vadiz to test-buy merchandise for food stamp coupons from the store. Ms. Vadiz was the sole investigative aide assigned to the case. The court finds the testimony of Ms. Vadiz credible; notwithstanding her lack of formal education and her failure to report the income received to welfare agencies, she stood up well to rigorous and thorough cross-examination. She testified that she visited the store on four occasions: August 18, 1982, September 8, 1982, September 13, 1982, and September 15, 1982. The Government presented receipts for all of these transactions other than the September 8, 1982 visit.

On August 18, 1982, Ms. Vadiz purchased $72 worth of merchandise with food stamps. The purchase included $14.95 worth of insulated cups and $26 worth of paper towels, which were ineligible for purchase with food stamps. When she left the store after making her purchases, she met with Mr. Rank, told him what happened, and returned the excess food stamps to him. She provided a description of a clerk but not his name. There was no mention or description of more than one clerk. A transaction report was filed out by Mr. Rank and signed by Ms. Vadiz.

On the September 8, 1982 visit, Ms. Vadiz purchased $67.95 worth of merchandise. Once again Ms. Vadiz stated she purchased from the same clerk involved in the transaction on August 18, 1982. The ineligible items she purchased with food stamps included cases of bathroom tissue, toothpaste, cleaner ($13.95), and seven packages of plastic forks. The receipt for this transaction was not in evidence nor was its unavailability adequately explained.

On the September 13, 1982 visit, Ms. Vadiz purchased $65.79 worth of merchan-

dise with food stamps from the same clerk as in the two preceding transactions. The ineligible items she purchased totalled $43 and included six packages of shampoo ($6.95), a case of towels ($16.95) and four packages of cups and cup lids ($10.69).

On September 15, 1982, Ms. Vadiz purchased $89.15 worth of merchandise. The ineligible items totalled $58 and included cases of cleanser ($19.25), oven cleaner ($21.25), soap pads ($7.45) and bathroom tissue ($10.95). Because Ms. Vadiz was carrying only $88 worth of food stamps, the clerk gave her credit for the $1.15 balance. Her testimony suggested L & S personnel expected that Ms. Vadiz would use the cups for the sale of coffee in her own business. Her description of the clerk involved in this transaction was different than in the prior transactions; the transaction report she signed on this occasion stated that this clerk had been present on prior occasions. But the contemporaneous transaction reports neither described nor referred to him. This clerk was later identified as Mr. Suarez. The court rejects the conclusions of the investigator on September 23, 1982 as inconsistent with the contemporaneous records and not supported by the preponderance of the evidence.

By letter of February 18, 1983, Malachy P. Cox, FNS Chief of Federal Operations Section, notified plaintiffs that FNS had reason to believe that plaintiffs had violated the Food Stamp Regulations and provided the reasons for that belief. By letter dated February 21, 1983, Candelario Lamboy responded to FNS' February 18, 1983 letter and requested a meeting to discuss the charges. By letter of March 17, 1983, N. Harwood, FNS Unit Supervisor, Federal Operations Section, denied Mr. Lamboy's request for a meeting and informed him that he had ten (10) days to respond to the charges. By letter dated March 26, 1983 Mr. Lamboy responded that he would wait until the FNS made a final determination before answering the charges. By letter of April 1, 1983, Malachy P. Cox notified plaintiffs that they were disqualified from participation in the Food Stamp Program for one year for violation of applicable reg-

ulations. Candelario Lamboy timely requested an administrative review of this decision and an opportunity to appear before the Food Stamp Review Officer. Plaintiffs were furnished with copies of materials on file and with the investigative report. On June 5, 1983, plaintiffs Suarez and Candelario Lamboy met with Administrative Review Officer John P. Kraynak to discuss the case. After administrative review, Kraynak sustained the one-year disqualification of plaintiffs by letter of October 28, 1983; this letter constitutes the final Agency action.

Plaintiffs filed the current action on November 29, 1983. Their complaint challenged both the factual determination underlying the administrative decision and the severity of the sanction imposed.

On November 30, 1983, the parties stipulated to a stay of disqualification pending disposition of the matter. This stipulation was approved by the court on December 3, 1983, but on December 6, 1984, the court vacated the stay effective January 31, 1985; the stay was subsequently reinstated pending disposition of this case.

■ The Food Stamp Act of 1977 provides judicial review in state or federal court of a final Agency determination; it provides that "[t]he suit in the United States district court or state court shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023. The court may review the Agency determination that the allegedly violative transactions occurred and its application of the regulations to the facts of the case. *See, e.g., Broad Street Food Market v. United States,* 720 F.2d 217 (1st Cir.1983); *Bruno's, Inc. v. United States,* 624 F.2d 592 (5th Cir.1980).

However, Congress did not intend *de novo* judicial review of the sanction imposed by the Agency.

The Committee wants to go on record as noting that, when there is imposition of disqualification for such period of time as may be determined in accordance with

regulations ... the Committee does not intend that in the trial *de novo* in the United States district court or state court of the final administrative determination of disqualification, the sanction or period of disqualification imposed would itself be subject to judicial review as several courts have held that it is. [Citations omitted]. The trial *de novo* as set forth in section 14 should be limited to a determination of the validity of the administrative action, but not of the severity of the sanction.

H.Rep. No. 464, 95th Cong., 1st Sess. 397–98, reprinted in 1977 U.S.Code Cong. & Ad.News 1704, 1978, at 2326–27.

The regulations establishing penalties for violations of the Food Stamp Act are set forth at 7 C.F.R. § 278.6. The regulations in effect at the time of the violative transactions in this case provided for a one-year disqualification:

(e) *Penalties.* FNS shall take action as follows against any firm determined to have violated the Act or regulations. The FNS regional office shall:

  \*   \*   \*   \*   \*   \*

(2) Disqualify the firm for 1 year if:

(i) The evidence shows that: (A) It is the firm's policy to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons, and the firm has engaged in such practices ... and

(ii) The firm was warned about the possibility that violations were occurring and of the possible consequences of violating the regulations. The regional office may disqualify a firm for 1 year, even though the firm was not warned about the possibility that violations were occurring, if the regional office finds that the firm has committed unusually serious violations of the kind described in (i)(A) ... of this subparagraph.

7 C.F.R. § 278.6(e)(2). The FNS informal guidelines used in 1982 as official policy by the Agency defined store policy in the following manner:

a disregard of program regulations, as opposed to carelessness or poor supervision, when there have been a minimum of four clearly violative sales of ineligible items, and any or all of the following persons took an active part in the violations:

a. *The owner, spouse, sons, daughters, or other close relatives* of the owner who are regularly involved in the operation of the store.

b. *Members of management,* including a person designated as a clerk, but who is in effect running the store in the absence of the owner for extended periods of time or on a regular basis.

c. *Two or more clerks* who sell common grocery-type or major non-grocery-type ineligible items without a consistent effort by these clerks to refuse to sell such items. Lack of consistent refusal effort by the clerks will be considered to reflect the operating policy of the store only in those cases in which there is a record of previous compliance action. Such compliance action must include documentation that the owner or appropriate store official had been warned about the possibility of violations occurring in the store and the consequence of future violations.

Major non-grocery ineligible items are defined at ¶ A.2.a(3)(d) to include:

*High Cost Ineligible Items.* Easily identifiable ineligible items costing in the range of $5 or more.

Examples of easily identifiable ineligible items are described in ¶ III.A.2.(a)(2) as:

cleaning products, paper products, and other low-cost household items.

A transaction is clearly violative if it includes thirty percent or more ineligible items. ¶ III.A.2.b.

■ The court finds that the factual basis upon which the Agency determined to impose a one-year disqualification was erroneous in two critical respects. First, Administrative Review Officer Kraynak's determination letter of October 28, 1983 stated that Jack Suarez, Secretary/Treasurer of the corporation, was present during each of the violative sales and that Tony Lam-

boy transacted three of the sales of ineligible items. However, the contemporaneous transaction reports signed by Ms. Vadiz refer to one clerk in each of the four transactions; her description of these clerks fits Jack Suarez on only the fourth occasion. Although comments in Ms. Vadiz' fourth transaction report suggest that Mr. Suarez had been present on prior occasions, the contemporaneous records for those three transactions neither describe nor refer to him. Mr. Suarez testified at trial that he was on vacation in Florida at the time of the August 18 and September 8, 1982 transactions and that he was not present during the September 13, 1982 transaction. Although plaintiffs produced no documentary evidence that Mr. Suarez was on vacation, the Government bears the burden of proving that Mr. Suarez was present during the transactions. Because Ms. Vadiz' contemporaneous reports of three visits describe a clerk other than Mr. Suarez and do not refer to him, the Government failed to meet its burden of proving that he was present on other than one occasion.

■ Moreover, Mr. Kraynak's determination letter stated that Tony Lamboy, another shareholder of L & S, transacted three of the four violative sales. However, it was not Tony Lamboy but Pablo Lamboy, a clerk at L & S, not one of the owners, who transacted the other three sales. Pablo Lamboy's testimony was corroborated by Ms. Vadiz' contemporaneous descriptions in the transaction reports and her testimony at trial. That an employee of L & S rather than one of the owners transacted all but one of the violative sales might have been material to the Agency in deciding the appropriate penalty.

■ The Agency determination was also based on an erroneous finding that the owners had been warned of violations of the Food Stamp Regulations involved. Following a visit in October, 1981, an FNS agent warned Mr. Suarez about the unusually high rate of coupon redemptions and reminded him that acceptance of food stamps from retailers without wholesale authorization was in violation of Program

regulations. No prior warning was provided concerning the violation for which plaintiffs were penalized—the sale of ineligible non-food items under the FNS Regulations establishing penalties for violations of the Food Stamp Act, set forth at 7 C.F.R. § 278.6. The Agency has based its determination in part on the fact that a warning had been given but it did not acknowledge that the warning concerned a different violation than the one for which the store was disqualified. A warning of possible violation is material because the regulations provide that a firm may be disqualified for one year without a warning only if the Agency finds that "the firm has committed unusually serious violations." 7 C.F.R. § 278.6(e)(2).

Where a court finds that the Agency determination was based upon an erroneous factual basis, the statute directs the court to "enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023. In this particular case, whether the severe penalty of a one-year disqualification is warranted on the facts as they have been determined at trial should be determined by the Agency in the first instance. Therefore, the court remands the case for consideration by the Agency. *See Broad Street Food Market, Inc. v. United States*, 720 F.2d 217, 220 (1st Cir.1983); *Goodman v. United States*, 518 F.2d 505, 512 (5th Cir. 1975).

The Agency is directed to determine the appropriate penalty based on the court's findings of fact. Furthermore, the Agency must determine the penalty based upon the proved violations of the Food Stamp Regulations, not on anonymous reports that the store was accepting food stamps from retailers without wholesaler authorization. Although the unusually high volume of coupon redemption at the store might suggest the reasonableness of further investigation of such reports, any disqualification from participation in the Food Stamp program must be based not on rumor but upon established fact. An appropriate Order follows.

## ORDER

AND NOW, this 27th day of February, 1985, for the reasons set forth in the foregoing Memorandum, it is ORDERED that this case is REMANDED to the Department of Agriculture Food and Nutrition Service for reconsideration of the penalty as the facts have been determined by the court; all proceedings are STAYED for thirty (30) days following a final decision on Remand.