PLAID PANTRY STORES, INC., dba
Plaid Pantry Store No. 65,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 85–4089.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 5, 1986.*

Decided Sept. 11, 1986.

Margaret H. Leek Leiberman, Portland, Or., for plaintiff-appellee.

Charles H. Turner, U.S. Atty., Portland, Or., Raymond W. Fullerton, Aaron B. Kahn, U.S. Dept. of Agriculture, Washington, D.C., for defendant-appellant.

Before WRIGHT, GOODWIN and NELSON, Circuit Judges.

PER CURIAM:

We affirm the judgment of the district court, reported at 612 F.Supp. 680 (D.Or. 1985), for the reasons given by the district

* Oral argument waived by the court.

judge. His analysis and opinion of June 18, 1985 demonstrate the care with which he considered the excessive sanctions imposed on this plaintiff-appellee by the United States Food and Nutrition Service. We agree with his conclusions and adopt his published opinion as that of this court. It is set out in the appendix below.

We note that the district judge relied on a district court opinion in *Bertrand v. United States,* (D.Or. Feb. 12, 1985, unpublished). That decision was recently affirmed by this court. *Nguyen v. United States,* 792 F.2d 1500 (9th Cir.1986).

AFFIRMED.

APPENDIX

CIVIL NO. 84–1409–PA

IN THE UNITED STATES
DISTRICT COURT

FOR THE DISTRICT OF OREGON

June 18, 1985

Wayne D. Palmer
Ted E. Runstein
Kell, Alterman & Runstein
1330 The Bank of California Tower
707 S.W. Washington Street
Portland, Oregon 97205
  Attorneys for Plaintiff
Charles H. Turner
United States Attorney
Arno Reifenberg
Special Assistant U.S. Attorney
1734 Federal Building
1220 S.W. Third Avenue
Portland, Oregon 97204
  Attorneys for United States of America

OPINION

This is an action to obtain judicial review of a three year disqualification of Plaid Pantry Store No. 65 from the food stamp program operated by the United States Food and Nutrition Service (FNS). Review

is pursuant to 7 U.S.C. § 2023. Section 2023 provides for a *de novo* court trial in which the validity of the administrative action is determined. If the action is determined to be invalid, the court may enter a judgment or order which it determines is in accordance with the law and the evidence. *Id.* Review of FNS sanction is under the arbitrary and capricious standard. *Bertrand v. United States*, 726 F.2d 518 (9th Cir.1984). In the present case the parties agreed to a trial on stipulated facts.

### FACTS

Plaid Pantry operates 118 convenience, retail grocery stores in Oregon and Washington, including Plaid Pantry Store No. 65 (hereinafter "plaintiff"). In January, 1983, defendant received a complaint that plaintiff was accepting food stamps for the purchase of beer and cigarettes (ineligible food stamp items). On January 10, 1983 Marvin Kolstad of the FNS met with Bruce Amick, plaintiff's acting manager to discuss the complaint. Mr. Amick told Mr. Kolstad that he tried to carefully train all employees to insure that they strictly complied with the food stamp rules and regulations. He further informed Mr. Kolstad that he had a new employee with whom he would discuss the allegations and that he would make every effort to insure that there were not food stamp violations. Mr. Amick then discussed the allegation with plaintiff's employees and reiterated plaintiff's policy to insist upon strict compliance of the food stamp rules and regulations.

The store's food stamp redemptions were not statistically excessive. Because the redemption rate had increased each month for the previous quarter, Mr. Kolstad decided to monitor plaintiff for February, March, and April, 1983. On January 24, 1983, Barbara Russell, officer in charge of the Portland FNS office, wrote Mr. Amick confirming his conversation with Mr. Kolstad, advising him of the possibility of violations and the possible consequences. She also notified Mr. Roger Penn, plaintiff's district supervisor and John Piacentini, plaintiff's president.

Mr. Kolstad submitted the case for investigation in July, 1983 but plaintiff was not notified of this investigation. Due to illness, the investigation did not occur until 1984. Plaintiff's store was investigated from February 23, 1984 to March 19, 1984. Reid Peterson, FNS investigator, was successful in purchasing ineligible items with food stamps on five occasions with three different clerks. One clerk was responsible for three of the transactions. His assistant, Susan Bush, was unsuccessful in her attempt to purchase ineligible items with food stamps. Her attempt was the only one occurring during the day. Mr. Reid's purchases all occurred between 7:40 p.m. and 12:30 a.m. Plaintiff's management is generally present during the day and not the evening hours. Plaintiff's management was not involved in any of the transactions and was not present during any of them.

On May 2, 1984, defendant charged plaintiff with violations of the food stamp regulations. *See* 7 C.F.R. § 2021. Plaintiff was invited to submit information relating to the charge but did not.

On May 24, 1984, Ms. Russell, on behalf of the FNS, presented a case summary of these alleged violations to the regional director for the FNS Western Region, for an administrative determination. On July 11, 1984, the director determined that plaintiff had violated the food stamp regulations and disqualified plaintiff from participation in the program for five years. He determined that it was plaintiff's practice to accept food stamp coupons in exchange for major and minor nonfood ineligible items.

On July 16, 1984, plaintiff requested administrative review of the determination of the regional director. On October 25, 1984, James A. Ramsey, an administrative review officer for the FNS, upheld the regional director's order with the modification that plaintiff's disqualification be for three years instead of five years because he determined the evidence was insufficient to establish that sales of major nonfood items (such as beer and cigarettes) was plaintiff's normal practice. Mr. Ramsay

found that the participation of three clerks in five violative transactions established that sales of common nonfood items was plaintiff's normal practice. He also found that the warning given plaintiff was appropriate and that a civil money penalty was inappropriate.

Plaintiff exhausted its administrative remedies and timely filed for this judicial review. I previously stayed plaintiff's disqualification pending my review.

Plaid Pantry employs a large number of part-time employees and experiences a high rate of employee turnover. At the time of the investigation, plaintiff employed eight employees at Store No. 65. Between January, 1983 and March, 1984, plaintiff employed twenty-nine different employees at Store No. 65.

Shortly before defendant's investigation began, a memorandum indicating that disregard of food stamp regulations would result in immediate termination was provided to the three employees allegedly involved in the noneligible transactions. These employees were required to sign the memorandum to insure compliance. The employees involved indicate they received extensive training concerning the food stamp program and that it was not their practice to violate the program's regulations.

## STATUTORY AND REGULATORY SCHEME

Food stamp coupons are only to be used to purchase food from retail food stores which have been approved for participation in the food stamp program. 7 U.S.C. § 2013. The Food Stamp Act was amended on September 8, 1982 to provide for definite periods of disqualification for retail stores violating section 2013. Title 7 of U.S.C. § 2021(b) provides that, upon the first occasion of disqualification, the disqualification shall be for a reasonable period of time, no less than six months, no more than five years. Title 7 of C.F.R. § 278.6(e) provides the penalties for retail stores which violate the food stamp regulations. Subsection 3 provides that the FNS can disqualify the firm for three years if it is to be the firm's first sanction and the evidence shows:

> (i) It is the firm's practice to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the firm was previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations....

Subsection 4 of 7 C.F.R. § 278.6(e) provides that the FNS can disqualify the firm for one year if:

> It is to be the first sanction for the firm and the ownership or management personnel of the firm have committed violations such as the sale of common nonfood items in amounts normally found in a shopping basket, and FNS had not previously advised the firm of the possibility that violations were occurring and of the possible consequences of violating regulations.

Subsection 5 of 7 C.F.R. § 278.6(e) provides that the FNS can disqualify the firm for six months if:

> It is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

Subsection 7 of 7 C.F.R. § 278.6(e) provides that the FNS may send the firm a warning letter if violations are too limited to warrant disqualification.

The FNS may impose a civil money penalty as a sanction in lieu of disqualification only when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices. 7 C.F.R. § 278.6(f).

Title 7 C.F.R. § 278.6(d) provides:

The FNS regional office making a disqualification ... determination shall consider: (1) the nature and scope of the violations committed by the personnel of the firm; (2) any prior action taken by FNS to warn the firm about the possibility that violations are occurring and (3) any other evidence that shows the firm's intent to violate the regulation.

Title 7 C.F.R. § 271.2 defines "firm's practice" as the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation.

In *Bertrand v. United States,* CV 81–838–RE and CV 82–369–RE, slip op. at 6 (D.Or. Feb. 12, 1985), the court found FNS Instruction 744–9 to be invalid because it had not been published in the Federal Register and it had significant impact on the substantive rights of retail store owners.[1] This Instruction interpreted the 1982 regulations then in effect which contained no definition of "store policy." The regulations have since been amended. In the present case the FNS asserts that it did not need to rely on Instruction 744–9 in determining that plaintiff had violated the regulations or in determining which sanction to apply. I will rely upon this FNS representation and examine the agency determination that a violative transaction occurred without reference to Instruction 744–9. *See Thatcher's Rexall Drug Center, Inc. v. United States,* CV 84–1879, slip op. at 6 (E.D.Pa. Oct. 24, 1984) [Available on WESTLAW, DCTU database] (imposition of sanction by FNS without reliance on FNS Instruction 744–9 upheld because the instruction was not published in the Federal Register or promulgated with procedural rulemaking requirements).

### DISCUSSION

A review of an administrative decision such as the suspension of food stamp redemption privileges involves two questions: (1) Did the violation occur? and (2) Is the penalty valid? *Bruno's, Inc. v. United States,* 624 F.2d 592, 594 (5th Cir.1980). In the present case there is no dispute that violative sales of ineligible items occurred. Therefore, my task is to determine whether the agency action in determining the sanction was arbitrary and capricious. *Bertrand,* 726 F.2d at 520. This standard requires the court to examine the sanction imposed in light of the administrative record to judge whether the agency properly applied the regulations; to determine whether the sanction is "unwarranted in law ... or without justification in fact...." *Woodard v. United States,* 725 F.2d 1072, (6th Cir.1984). Congress did not intend *de novo* judicial review of the sanction imposed by the Agency. H.Rep. No. 464, 9th Cong., 1st Sess. 397–98, *reprinted in* 1977 U.S.CODE CONG. & AD.NEWS 1978, 1704, 2326–27. However, the courts have the power to review sanctions. *Hough v. United States Department of Agriculture,* 707 F.2d 866, 868 n. 1 (5th Cir.1983).

In reviewing the sanctions imposed, I note that the disqualification must be for a reasonable period of time [7 U.S.C. §§ 2021(b)(1) and (2)] and that Congress believed that civil money penalties should be the normal penalty instead of disqualification. H.Rep. No. 464, 95th Cong., 1st Sess. 397, *reprinted in* 1977 U.S.CODE CONG. & AD.NEWS 1978, 2326.

In order to disqualify a firm for three years, it must be the firm's "practice" to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket. The firm must have been previously warned that violations might be occurring and of the possible consequences of such violation. 7 C.F.R. § 278.6(e)(3). The plaintiff argues that there was not sufficient evidence for the FNS to prove it was the firm's practice to commit violations and that there was no adequate warning provided. Plaintiff has the burden of establishing by a preponderance of the evidence that the disqualification was factually wrong. *Han v. FNS,* 580 F.Supp. 1564, 1567 (D.N.J.1984).

---

1. In *Bertrand v. United States,* 726 F.2d 518, 521 (9th Cir.1984), the court found that Instruction 744–9 was a reasonable interpretation of the regulation.

### 1. *Sufficiency Of The Evidence.*

Plaintiff argues that the FNS failed to follow its own regulations in determining that it was plaintiff's practice to violate the regulations. It asserts that the FNS did not examine the firm's intent to violate the regulation, that the only attempt at an ineligible transaction during the time when management or supervisory personnel would be present resulted in a refusal or other factors. Plaintiff argues that the FNS chose to arbitrarily emphasize certain factors, without consideration of all of the facts in determining what plaintiff's "normal practice" was.

In *Bertrand*, 726 F.2d at 521, the court found that a one year disqualification for sale of cartons of cigarettes or alcoholic beverages in exchange for food coupons by the owner's son when the store had also received adequate warning was valid. A one year disqualification was upheld in *Woodard v. United States*, 725 F.2d at 1072. The employees involved in the transactions in *Woodard* included the owner's son and daughter, ineligible sales were made on a "number of occasions," the ineligible items sold included beer and the firm had a practice of buying food coupons at a discount. The *Woodard* employees who participated in the violative sales were officially discharged after the sales but one of them, the owner's son, continued to do odd jobs around the store. *Id.* at 1075.

In *Bruno's, Inc. v. United States*, 624 F.2d at 592, the court affirmed the district court's decision that Bruno's had violated the Food Stamps Act but that a sixty day suspension imposed by the FNS was arbitrary and capricious. The court affirmed the district court's order that the sixty day sanction be reduced to a written warning. Undercover shoppers at Bruno's were successful in five out of six attempts to purchase ineligible items. The *Bruno's* court relied partly on FNS Instruction 744-9. However, the facts in that case indicated that, even without reliance on this Instruction, the *Bruno's* suspension was arbitrary. The court found that the record in that case established that the violations were

against store policy. *Id.* at 595. The district court determined that Bruno's had done all it could to prevent violations. *Id.* In transactions occurring over a period of eight days, only three clerks were implicated. The court found that this was not a substantial percentage of all the clerks. None of the items purchased were major ineligible items such as cigarettes or alcoholic beverages.

In the present case, the investigators were successful in five out of six attempts to purchase ineligible items with food stamps with three different clerks. One clerk was responsible for three of the transactions. The one unsuccessful attempt was the only attempt during the hours when management was present. The three year disqualification was not imposed for the sale of any major ineligible items. At the time of the investigation, plaintiff employed eight employees and employed twenty-nine employees between January, 1983 and March, 1984. Plaintiff's employees are extensively trained in food stamp regulations and procedures. The three employees involved in the transactions received substantial training concerning the food stamp program. The employees involved were immediately terminated by plaintiff as a result of defendant's allegations.

The facts in the present case are similar to those in *Bruno's*. As in *Bruno's*, the plaintiff in the present case "did everything he could do to insure compliance." The court in *Bruno's*, interpreting FNS Instruction 744-9, found that these facts did not establish that it was the store's policy to violate the food stamp regulations.

Title 7 of C.F.R. § 278.6 was amended in 1982 to provide for a three year disqualification if it is the firm's "practice" to commit violations. 7 C.F.R. § 271.2 defines "practice" as "the usual manner in which personnel ... accept food coupons as shown by the actions of the personnel at the time of the investigation." Webster's defines a "practice" as "something habitually engaged in." Webster's Third New

International Dictionary 1780 (unabridged Ed.1976). The facts of the present case support the conclusion that it was not the plaintiff's "practice" to violate the food stamp regulations. In addition the FNS made no findings concerning whether the amount of ineligible items sold by plaintiff were of an amount "normally found in a shopping basket" as required by 7 C.F.R. § 278.6(e)(3). The FNS review officer did not consider plaintiff's intent as required by 7 C.F.R. § 278.6(d). I find that the FNS's sanction of plaintiff for three years was violative of 7 C.F.R. § 278.6(e)(3). There was not sufficient evidence to find it was plaintiff's practice to violate the regulations. Defendant did not properly apply its regulations. The sanction of three years disqualification is "unwarranted in law" and therefore arbitrary and capricious.

### 2. Sufficiency of The Warning.

Pursuant to 7 C.F.R. § 278.6(e)(3)(i) the store must have been previously advised of the possibility of violations and of the possible consequences in order to be disqualified for three years. The only warning plaintiff received was a January 24, 1983 letter from Barbara Russell, officer in charge of the FNS Portland Field Office. This letter confirmed the conversation between Mr. Kolstad of the FNS and Mr. Amick on January 19, 1983. The letter stated that Mr. Kolstad and Mr. Amick discussed a complaint that plaintiff was accepting food stamps from Asian families for the purchase of beer and cigarettes and that Mr. Amick stated he was not aware of any violations but that he would review the program rules with his employees, especially one new employee. The letter also stated:

> You should take special care to prevent violations because they may lead to your disqualification from the Food Stamp Program. You are responsible for violations committed by your employees. Therefore, it is vital that you make sure

that all the store's employees, including new and part-time employees, know the regulations and adhere to them.

The penalties provided in Section 278.6 of the Food Stamp Program Regulations will be imposed on those authorized firms that do not adhere to the regulations.

Copies of this letter were also sent to Mr. Piacentini, president and Mr. Penn, supervisor.

In *Bertrand*, 726 F.2d at 521, the court found that a warning letter sent sixteen months before the violations occurred was sufficient warning of possible food stamp violations. The court relied on FNS Instruction 744–9 which stated that warning must be given no more than three years before a violation in order to impose the one year disqualification then in effect.[2] The court stated that was a reasonable period of time in view of the fact that the entities involved are businesses which should be capable of complying with the regulations without repeated monitoring. *Id.* at 522. In *Bertrand*, the FNS discussed the warning with the owner's son, who had made some of the violative transactions, and with the owner herself before sending the warning letter.

*Bertrand* involved a "Mom and Pop" store with warnings given directly to the owner and her son, both of whom worked in the store when the warning was given and when the subsequent violations occurred. Mr. Amick left plaintiff's employment shortly after the warning letter was received. In addition to Mr. Amick, there have been two other managers at Store No. 65 between the warning letter and the alleged violations. Mr. Penn, the district supervisor who received a copy of the warning letter, left plaintiff's employment in July, 1983. A different district manager was employed at the time of the alleged violations. The FNS Instruction relied on by the *Bertrand* court was interpreting reg-

---

2. The regulation then in effect was amended by the 1982 amendments which now provide for a three year disqualification.

ulations where the maximum penalty involved was a one year disqualification. That penalty in the present case is a three year disqualification. Plaintiff's redemption rate after the warning declined so plaintiff had no reason to suspect that violations were occurring.

The warning letter plaintiff received dealt with the alleged violative sale of beer and cigarettes. The FNS review officer modified the regional director's initial decision in the present case because he found that evidence insufficient to establish that sales of major nonfood items such as beer and cigarettes was plaintiff's normal practice. Therefore, the warning plaintiff received did not concern the violations which it was later disqualified for. In *Lamboy v. United States*, 604 F.Supp. 490, 494 (E.D. Pa.1985), the court found the warning plaintiff received was inadequate when the plaintiff was not warned of the specific violation for which it was penalized.

In the present case, the warning was not specific. It was also inadequate because the FNS dealt with plaintiff as a Mom and Pop organization and did not take plaintiff's high turnover in personnel into consideration. The warning was untimely for a severe penalty of three years disqualification. I find the warning given plaintiff was inadequate. The three year disqualification of plaintiff violated the requirements of 7 C.F.R. § 278.6(e) and therefore, was arbitrary and capricious.

### 3. *Alternative Sanctions.*

Where a court finds that the Agency determination was erroneous, the court may "enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023. The court may itself choose a new sanction based on all the evidence, or remand for the agency to select a new penalty. *Broad Street Food Market, Inc. v. United States*, 720 F.2d 217, 220 (1st Cir.1983).

Plaintiff could be disqualified for one year if it is its first sanction, the ownership or management have committed violations, and the firm has been previously warned of

the possibility that violations were occurring and of the possible consequences of those violations. 7 C.F.R. § 278.6(4). This is the plaintiff's first sanction and the warning given to plaintiff by the FNS was inadequate. There is also no evidence that the management or ownership committed any violations of the food stamp regulations. The evidence in the present case is that management committed no violations and did everything it could to prevent any violations. Therefore disqualification of one year pursuant to 7 C.F.R. § 278.6(4) is not an appropriate sanction.

In order to be disqualified for six months, it must be the firm's first sanction and the evidence must show that personnel have committed violations due to carelessness or poor supervision by the firm's ownership or management. 7 C.F.R. § 278.6(5). An employer can be held responsible for his employees violative food stamp transactions. *Kulkin v. Bergland*, 626 F.2d 181, 183 (1st Cir.1980).

In the present case, plaintiff extensively trained its employees, had a policy of terminating its employees who violated the food stamp regulations and did terminate those employees involved in the violative transactions at issue in this case. Plaintiff did everything it could possibly do to comply with the food stamp regulations. An employer can be penalized for violations of its employees, but not when it has done everything possible to insure compliance by them. Because plaintiff did all it could to secure compliance with the food stamp regulations, I find that there was no carelessness or poor supervision by plaintiff in the present case. Therefore, the six month disqualification provided in 7 C.F.R. § 278.6(5) is an inappropriate sanction.

The FNS determined that a money penalty was not appropriate in the present case pursuant to 7 C.F.R. § 278.6(f) because it determined that a disqualification would not cause hardship to food stamp households since there is another authorized retail food store in the area selling as large a variety of staple food items at comparable prices. This is a decision within the exper-

tise of the agency and I will not disturb its finding on this sanction.

Plaintiff shall be sent a warning letter because the violations are too limited to warrant a disqualification. 7 C.F.R. § 278.-6(e)(7). Because I have determined that the FNS improperly applied regulation 7 C.F.R. § 278.6 to plaintiff, I do not need to determine if that regulation is void for vagueness as plaintiff asserts. Plaintiff's disqualification for three years was an arbitrary and capricious action. That disqualification is vacated and defendant is ordered to send plaintiff a warning letter pursuant to 7 C.F.R. § 278.6(e)(7).

DATED this 18 day of June, 1985.

/s/ Owen M. Panner  
OWEN M. PANNER  
United States District Judge