**Ann VARNADORE, d/b/a Little Convenience Store, Plaintiff,**

v.

**The UNITED STATES of America, and its agent, The Department of Agriculture, Defendants.**

**Civ. A. No. 3:90–2202–19.**

United States District Court, D. South Carolina, Columbia Division.

Oct. 21, 1991.

---

Hemphill P. Pride, II, Adrenee Glover Freeman, Columbia, S.C., for plaintiff.

Emery R. Clark, Terri Hearn Bailey, Asst. U.S. Atty., Columbia, S.C., for defendants.

## ORDER

SHEDD, District Judge.

Plaintiff filed this action seeking review of a decision by the Food and Nutrition Service (FNS) imposing a sanction on Ann Varnadore and Little Convenience Store for violating the Food Stamp Act by selling ineligible nonfood items in exchange for food stamps. Specifically, the FNS determined that the plaintiff violated 7 C.F.R. 278.6(e)(3)(ii), allegedly because it was the firm's practice to sell conspicuous nonfood items, cartons of cigarettes and alcohol beverages in exchange for food coupons, and disqualified the Little Convenience Store from participating in the food stamp program for 3 years.

After receiving the testimony, carefully considering all the evidence, weighing the credibility of the witnesses, reviewing the exhibits and briefs, and studying the applicable law, this Court makes the following Findings of Fact and Conclusions of Law pursuant to *Fed.R.Civ.P.* 52. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

1. On February 19, 1986, plaintiff Ann Varnadore applied to FNS for authorization for the Little Convenience Store to participate in the food stamp program. As owner of Little Convenience Store, plaintiff signed an application which included a statement that:

> "My signature at the bottom of this form means the following:
>
> I am applying for authorization to take part in the Food Stamp Program.
>
> I have read and understand the regulations that govern the program (Part 271, "General Information and Definitions," and Part 278, "Participation of Retail Food Stores, Wholesale Food Concerns, and Banks," 7 CFR).
>
> My firm (including all employees) will comply with the program regulations.
>
> I understand that the U.S. Department of Agriculture can revoke any authorization to participate for any violations of the firm's employees.

*Government Exhibit 1.*

FNS subsequently granted the authorization, and the Little Convenience Store began its participation in the food stamp program.

2. Prior to December 1989, the plaintiff was familiar with the rules and regulations governing the administration of the Food Stamp Act, including the prohibition against accepting food stamps for cigarettes, beer and other non-food items.

3. As a result of an anonymous complaint, Tonia R. Harr, Officer-in-Charge of the FNS, Columbia, South Carolina, submitted a Request for Investigation to the Atlanta Field Office of the FNS officials in Atlanta, Georgia, to conduct a compliance investigation of the Little Convenience Store.

4. Between December 5, 1989 and January 3, 1990, a United States Department of Agriculture investigator, Billy Cooper, conducted an investigation into the practices of the Little Convenience Store. He obtained the assistance of an undercover officer with the Cherokee County Sheriff's Department, Ms. Wendy Brewer.[1] Ms. Brewer made six separate visits to the Little Convenience Store during this time period. During five of these visits, Ms. Brewer, the investigative aid, purchased eighteen (18) ineligible items with food stamps. These items included such conspicuous non-food products as a six-pack of beer, two cartons of cigarettes, paper products, petroleum jelly, fabric softener, bleach and detergent. Two sales clerks were involved in the five transactions described above. On the sixth visit, Ms. Brewer attempted to exchange food stamps for cash but was refused.

5. The plaintiff was notified on March 12, 1990, of the possible disqualification and given an opportunity to respond to the agency's charges. The plaintiff generally denied the charges. Subsequently, the agency disqualified the Little Convenience Store from participating in the food stamp program for a period of three (3) years. Plaintiff filed a timely request for administrative review. The administrative review officer issued a final order sustaining the disqualification of the Little Convenience Store for three (3) years. The disqualification period was to be effective beginning September 19, 1990, but was stayed by an order of this Court, Judge Hamilton, dated September 21, 1990. This order was subsequently dissolved on October 22, 1990.

6. The plaintiff asserted before this Court at the *de novo* hearing that the five

(5) sales transactions set forth in paragraph 4, did not occur. Further the plaintiff asserts that Ms. Robin Bundy, who the FNS contends is a manager of the Little Convenience Store, did not sell any ineligible nonfood items to the investigative aid, Ms. Brewer.

However, the Court finds that the testimony of the investigator, Mr. Billy Cooper and the investigative aid, Ms. Brewer is truthful. On each occasion, Ms. Brewer entered the Little Convenience Store with only food stamps and purchased ineligible nonfood items. She and Mr. Cooper then prepared an inventory of the items immediately following the purchases. This inventory is contained in the Transaction Report which was introduced into evidence as *Government Exhibit 5.*

7. In addition, Ms. Brewer also identified the sales clerks in the Transaction Report either by name or by description. The Transaction Report identifies a 5 feet 3 inches tall, white female, approximately 40 years old, with red hair and weighing approximately 200 lbs. as one of the sales clerks. This sales clerk was subsequently identified in Court as Mrs. Shirley Bingham. Mrs. Bingham also fits the description contained in the Transaction Report. Mrs. Bingham testified that she was generally present during this time period but she does not have a specific recollection of the specific days that she is alleged to have sold the ineligible nonfood items to Ms. Brewer. Mrs. Bingham also acknowledged that she fits the description contained in the Transaction Report.

The Court finds that Mrs. Bingham sold the ineligible nonfood items listed in the Transaction Report, *Government's Exhibit 5*, to Ms. Brewer on December 5, 7, 12, and 13.

8. Ms. Brewer identified the second sales clerk, involved in the sales transaction on December 6, 1989, as Robin Bundy. Ms. Brewer testified that she knew Ms. Bundy from previous visits to the Little Convenience Store and specifically recalls

---

1. The witness married subsequent to the investigation of the Little Convenience Stores and her name at the time of this hearing is Mrs. Wendy

Glenn. However, since the records in this case refer to her as Wendy Brewer, she will be referred to as Ms. Brewer in this Order.

this transaction because, according to Ms. Brewer, Ms. Bundy recommended petroleum jelly to her for blisters. Ms. Brewer further identified Ms. Bundy in court and Ms. Bundy is also identified in the Transaction Report as "Robin."

Plaintiff strongly asserts that Ms. Brewer is either fabricating the transaction of December 6, 1989 or that Ms. Brewer is mistaken as to the identity of Ms. Bundy. According to plaintiff, Ms. Bundy was visiting plaintiff's husband, Mr. Varnadore in the hospital during the time of the alleged purchase on December 6, 1989. Ms. Bundy testified that it was her habit to be at the hospital during this time of day when Mr. Varnadore was hospitalized. However, Ms. Bundy does not have a specific recollection of being at the hospital at 11:00 a.m. on December 6, 1989. Mr. Varnadore also testified as to Ms. Bundy's habit but did not have a specific recollection that Ms. Bundy was in his hospital room at the time of the purported purchase by Ms. Brewer. Moreover, Ms. Bundy testified that she was generally present at the Little Convenience Store during these hours.

The Court rejects plaintiff's contention and finds that Ms. Bundy did in fact sell ineligible nonfood items to Ms. Brewer on December 6, 1991.

9. Plaintiff also testified that the Little Convenience Store did not carry Marcal Paper Towels, Diamond Aluminum Foil or Downy Fabric Softener, three items Ms. Brewer allegedly purchased with food stamps. However, the year-end inventory for the Little Convenience Store for 1989 specifically identifies Marcal Paper Towels, *Government Exhibit 17*. Therefore the Court finds that the Little Convenience Store had Marcal Paper Towels in stock for sale during the relevant time period.

The inventory also lists aluminum foil but does not specify a brand name. Downey Fabric Softener is not identified on the inventory list. This inventory list is a snapshot of the items in stock at the Little Convenience Store as of December 31, 1989. It is very useful for determining whether the store had an item in stock but is less useful for proving the absence of an item. The fact that an item does not appear on the December 31, 1989 inventory list does not establish that the item was not in stock prior to December 31, 1989. Also, the inventory does not list any fabric softener, even though the plaintiff testified that the Little Convenience Store carried it. Plaintiff has not offered any additional evidence that these items were not sold to Ms. Brewer.

Plaintiff further asserts that, since the investigator, Mr. Cooper, donated the items allegedly purchased during his investigation of Little Convenience Store to various charitable organizations, that the Court should conclude that the items were not purchased. While the current absence of evidence taken within the sole custody of the defendant may create a negative inference against the FNS, this inference is more that outweighed by the direct evidence presented through the testimony of Mr. Billy Cooper and Ms. Brewer, that the items identified in the Transaction Report were in fact purchased.

Therefore, the Court finds that the Little Convenience Store sold the ineligible nonfood items listed in the Transaction Report, *Government's Exhibit 5*, in exchange for food stamps in violation of the Food Stamp Act. The ineligible nonfood items were sold on five (5) different occasions by two (2) separate clerks, Shirley Bingham and Robin Bundy.

10. The FNS contends that one of the clerks who sold ineligible nonfood items, Robin Bundy, was also a manager of the Little Convenience Store. The Court agrees. The plaintiff, Mrs. Varnadore signed a reply to the FNS complaint stating that "Robin is considered to be manager," *Exhibit 9*. The plaintiff also testified that Ms. Bundy would be left in charge of the operations of the store when the plaintiff was not present. Plaintiff's husband, Mr. Varnadore also testified that he considered Ms. Bundy to be a manager, although he contends the title "manager" as used by him has a meaning different from the meaning attributed to this title by the FNS.

11. Under 7 C.F.R. § 278.6(f), the FNS may impose a civil penalty as a sanction in lieu of disqualification when the firm subject to disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households, because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.

There is a Piggly Wiggly food store within one-half mile of the Little Convenience Store which offers a wider variety of staple food items than the Little Convenience Store at comparable prices. There was conflicting testimony about the distance between the Piggly Wiggly and the Little Convenience Store. However, the Officer–In–Charge of the FNS, Ms. Tonia Harr, was the only witness that specifically testified that she measured the distance using an automobile odometer and she testified that the distance between the two (2) stores is one-half mile. The Court credits her testimony over the conflicting testimony of other witnesses.

## CONCLUSIONS OF LAW

■ This matter is properly before the Court pursuant to 28 U.S.C. § 1331 and 7 U.S.C. § 2023 which provides for judicial review of the determination of a food stamp review officer. In determining the validity of the FNS action, the Food Stamp Act provides that a district court's review "shall be trial *de novo*," 7 U.S.C. § 2023(a); 7 C.F.R. 279.10(c). The trial *de novo* is limited to the factual determination of whether the plaintiff violated the Food Stamp Act. *Cross v. United States*, 512 F.2d 1212 (4th Cir.1975). The plaintiff has the burden of proving by a preponderance of the evidence that the disqualification was factually wrong. *Plaid Pantry Stores, Inc. v. United States*, 612 F.Supp. 680 (D.Or.1985), *aff'd*, 799 F.2d 560 (9th Cir.1986). Once the district court finds that a violation occurred, the sanction imposed by the FNS is reviewed to determine whether it is arbitrary and capricious, *Cross v. United States*, 512 F.2d 1212 (4th Cir.1975).

As stated in the Findings of Facts, the Court concludes based on its *de novo* review that the Little Convenience Store sold ineligible nonfood items in exchange for food stamps in violation of the Food Stamp Act. The FNS disqualified the Little Convenience Store for violating 7 C.F.R. 278.-6(e)(3)(ii) because it was the firm's practice to sell expensive or conspicuous non-food items, including cartons of cigarettes and alcoholic beverages in exchange for food stamps and the Little Convenience Store had not been previously warned of the possibility of such violations.

■ The evidence is clear that the Little Convenience Store sold cigarettes, alcoholic beverages and other conspicuous items in exchange for food stamps. Once the determination that these ineligible nonfood items were sold by the Little Convenience Store, the inquiry then shifts to whether these types of illegal sales were the "firm's practice" as required in 7 C.F.R. § 278.6(e).

"Firm's practice" is defined as:

"Firm's practice" means the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation.

7 C.F.R. § 271.2.

In addition, the FNS issued a handbook to assist the agency's personnel in determining what is a "firm's practice" within the context of a Food Stamp Act violation. While these handbook provisions are not binding on this Court, they are instructive as to how the agency charged with the task of making the initial determination evaluates this question. In section 1221 of FNS Handbook 318 entitled "Evaluating Evidence", it is provided:

Regional and field office personnel shall consider the following facts in making recommendations for, and determinations of, administrative action:

A. *Type of Violation and Extent of Program Harm.* Consideration of the following factors will determine the extent of program harm resulting from the violations being reviewed:....

c. *Usual.* Four or more sales of at least three inexpensive nonfood items each, without a substantial attempt to comply, indicating that selling such items for food coupons is the *firm's usual practice.* [emphasis added]

d. *Serious.* Three sales of three expensive nonfood items[2] ..., in addition to or in conjunction with, four sales of inexpensive nonfood items, indicating that selling such items for food coupons is the *firm's usual practice.* [emphasis added]

Furthermore, Section 1221 B of the FNS Handbook 318, defines a violation as a deliberate disregard of the regulations and as the firm's normal practice where there has been a minimum of four sales in which certain persons such as the owner, the owner's family members, or members of management took an active part in the violations.

The Little Convenience Store's violations clearly are within the FNS Guideline definition of "firm's practice." Under Section 1221 A, a firm's *usual* practice is defined as four or more sales of at least three inexpensive nonfood items. Here, there were five such transactions, all with three or more ineligible items. In addition, the sale of three expensive or major nonfood items in conjunction with four sales of inexpensive nonfood items is considered to be a serious violation and indicates that selling such items is the firm's usual practice. In this case there were five illegal transactions with three instances of major ineligible items, as defined in the FNS Guidelines, being sold. In one of the transactions, Robin Bundy, who was a manager of the Little Convenience Store, sold a carton of cigarettes[3] in exchange for food stamps. Since Ms. Bundy is a member of manage-

ment, then under Section B, the violations are considered part of the "firm's practice" under these guidelines as well.

It is clear therefore that, under the guidelines adopted by FNS, the violations of the Little Convenience Store were part of the firm's practice. However, as noted above, the FNS Guidelines are instructive but not dispositive on the issue of whether these violations can be said to be the firm's practice. This determination shall be decided upon a *de novo* review of the evidence by this Court. *Wong v. U.S.,* 859 F.2d 129 (9th Cir.1988). This Court concludes that the Little Convenience Store had a firm's practice of selling expensive and conspicuous nonfood items, cartons of cigarettes and alcoholic beverages in exchange for food stamps, in violation of 7 C.F.R. 278.-6(e)(3)(ii).

Ms. Brewer purchased ineligible nonfood items with food stamps on five successive occasions. There were only four clerks[4] working at the Little Convenience Store and two of the four clerks sold ineligible nonfood items for food stamps.

Plaintiff argues that the two clerks who sold the ineligible nonfood items were not employees of the Little Convenience Store. Mrs. Bingham was not on the payroll of the Little Convenience Store and she did not receive any money for her services. According to plaintiff, Mrs. Bingham volunteered her services when the plaintiff needed additional help.

However, Mrs. Bingham acknowledged that she lives on the Varnadore's property and was not being charged rent. Mrs. Bingham also was allowed to take various items from the store, such as food and gasoline, while she was working. In addition, Ms. Bundy was receiving money for her services and was listed as an employee

---

2. "Expensive nonfood items" is defined in FNS Handbook 318 by referencing the definition of "major ineligible items" in § 1221(A)(2)(a)(3), which states, *"Expensive Items:* Any ineligible item costing $10.00 or more." The definition of "major ineligible items" also includes alcohol when four or more cans or bottles, of any size, of beer are sold in a single transaction. Tobacco is also included within this definition where one carton or ten loose packs of cigarettes are sold in a single transaction.

3. Cigarettes are considered to be "major ineligible items" under the FNS Guidelines where, in a single transaction, one carton or ten loose packs of cigarettes are sold. § 1221(A)(2)(a)(3), *FNS Handbook* 318.

4. In addition to Robin Bundy and Shirley Bingham, the plaintiff and her husband served as check-out clerks at the Little Convenience Store.

of the Little Convenience Store beginning in October, 1989.

Ms. Bundy is unquestionably an employee of the Little Convenience Store. Also, it appears that Mrs. Bingham was receiving sufficient imputed income to qualify as an employee. Regardless of how Mrs. Bingham is classified, she clearly falls within the requirements of the Food Stamp Act. 7 C.F.R. § 271.2 speaks in terms of "personnel." Furthermore, the plaintiff should not be allowed to frustrate the purposes of the food stamp program by characterizing check-out clerks as volunteers and allowing them to sell ineligible nonfood items.

The Little Convenience Store never refused to allow Ms. Brewer to purchase ineligible nonfood items with food stamps. On two separate occasions, Ms. Brewer purchased cigarettes with food stamps, one of these purchases was from a manager of the Little Convenience Store, Robin Bundy. On another occasion, Ms. Brewer purchased a six pack of beer with food stamps. Based upon the evidence before this Court, it is clear that these transactions were a part of the firm's usual practice, as defined in 7 C.F.R. § 271.2.

■ Having concluded that the Little Convenience Store violated 7 C.F.R. 278.6(e)(3)(ii), this Court must determine whether the sanction imposed by the FNS is "arbitrary and capricious," *Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir.1975). A sanction is arbitrary and capricious if it is unwarranted in law, or without justification in fact. *Id.* In *Cross v. United States*, the Fourth Circuit held that the "scope of review of a sanction is not as broad as the scope of review of the fact of the violation. The more limited scope of review of a sanction results from the vesting of discretion by Congress in the Secretary [of Agriculture] ..." *Id.* at 1219.

When determining whether the penalty imposed in this case is arbitrary and capricious, the Court must first look to the general regulatory scheme to determine whether it is arbitrary and capricious. If the regulatory scheme is not arbitrary and capricious, then this Court must determine whether the specific penalty applied in this case is within the rational regulatory framework.

■ The regulations and the range of penalties available under the regulations are rationally related to the purposes of the Food Stamp Act. The scheme contemplates increased penalties based not only upon the degree to which management is involved in violations, but also on the egregiousness of the violations involved. Moreover, the range of penalties is within the parameters of the Food Stamp Act. The Act provides that a first time violator shall be disqualified for a reasonable period of time, no less than six months and no more than five years. 7 U.S.C. § 2021(b). These regulations have also been repeatedly applied by the Fourth Circuit Court of Appeals. *See e.g. Bowen v. Block*, 667 F.2d 445 (4th Cir.1982); *Herling's Grocery Basket, Inc. v. United States*, 538 F.2d 86, 87 (4th Cir.1976); *Cross v. United States*, 512 F.2d 1212 (4th Cir.1975). Additionally, the plaintiff does not contend that the regulations promulgated by the United States Department of Agriculture are arbitrary and capricious. Therefore, the Court concludes that the regulatory scheme as well as the FNS Guidelines are not arbitrary and capricious.

Furthermore, the penalty imposed upon the Little Convenience Store is mandated under the regulations. 7 C.F.R. § 278.6(e) states: "[The] FNS *shall take action* as follows against any firm determined to have violated the Act or regulations.... (3) *Disqualify a firm for 3 years* if it is to be the first sanction of the firm and the evidence shows that ..." the firm violated Section (e)(3)(ii) [emphasis added]. As noted above, the Court finds that the Little Convenience Store violated 7 C.F.R. § 278.6(e)(3)(iii).

■ Plaintiff contends that the FNS decision is arbitrary and capricious because the agency did not make a specific finding that the plaintiff intended to violate the Food Stamp Act. However, there is no requirement under the regulations of a finding that the firm specifically intended to violate the law. The ultimate finding

which the regulations require is whether the firm had a practice of selling nonfood items for food stamps. *Carlson v. U.S.*, 879 F.2d 261 (7th Cir.1989), *Sims v. U.S.D.A.*, 860 F.2d 858 (8th Cir.1988).

█ Additionally, plaintiff asserts that the FNS did not use appropriate comparable cases to justify its penalty against the Little Convenience Store. According to the FNS Guidelines in effect during this time period, the reviewing officer was required to identify two cases which are essentially similar to the case under consideration. The FNS Officer–In–Charge testified that she in fact used two comparable cases.

The Guidelines in effect during this time period provided that the reviewing officer's determination of disqualification should be in agreement with determinations reached in selected comparable cases. Plaintiff argues that cases selected by the FNS were chosen merely because the period of disqualification was identical, rather than selecting two cases that are factually similar to the Little Convenience Store's violations. Plaintiff did not present any evidence, however, that the facts of the comparable cases were materially different from the present case. Plaintiff has the burden of proving that the penalty was arbitrary and capricious. The plaintiff has not presented sufficient evidence from which this Court can reasonably conclude that the comparable cases were not similar to this case. *See* § 1210 D, *FNS Handbook 318*.

█ Plaintiff also contends that the agency should have imposed a civil penalty upon the Little Convenience Store pursuant to 7 C.F.R. § 278.6(f), rather than a period of disqualification. 7 C.F.R. § 278.6(f) provides that: "[The] FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

As noted in the Findings of Fact, there is an authorized Piggly Wiggly food store within one-half mile from the Little Convenience Store. This Piggly Wiggly food store offers a wider variety of staple food items than the Little Convenience Store at comparable prices. The Court further finds that the disqualification of the Little Convenience Store would not create a hardship to food stamp households. While food stamp recipients may be inconvenienced by traveling one-half mile further to the Piggly Wiggly, it cannot be said that this distance would pose a hardship.

Therefore, the Court concludes that the three (3) year penalty imposed upon the Little Convenience Store for violating 7 C.F.R. § 278.6(e)(3)(ii) by the FNS was not arbitrary and capricious.

## CONCLUSION

Based upon a *de novo* review of the evidence, the Court finds that the Little Convenience Store violated 7 C.F.R. § 278.-6(e)(3)(ii) because it was the firm's practice to sell expensive or conspicuous nonfood items, cartons of cigarettes and alcoholic beverages in exchange for food stamps. The three (3) year period of disqualification sanction imposed by the FNS was not arbitrary and capricious but was in fact mandated by the regulations. Further, a civil penalty in lieu of disqualification is not available to the plaintiff, because the disqualification of the Little Convenience Store will not create a hardship to food stamp households.

THEREFORE, IT IS HEREBY ORDERED THAT,

Plaintiff's Complaint be dismissed with prejudice, with costs to be awarded to the defendant.

IT IS SO ORDERED.