**Ray BERTRAND, dba Ray's Groceries, Plaintiff-Appellee-Cross-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellant-Cross-Appellee.**

No. 83–3628/3766.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1983.
Decided Feb. 21, 1984.

Jonathan M. Hoffman, Martin, Bischoff, Templeton, Biggs & Ericsson, Portland, Or., for plaintiff-appellee-cross-appellant.

Judith D. Kobbervig, Asst. U.S. Atty., Elden M. Gish, Sp. Asst. U.S. Atty., Portland, Or., Jenny A. Sternbach, Dept. of Justice, Washington, D.C., for defendant-appellant-cross-appellee.

Before SKOPIL, CANBY and BOO-CHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Raymond Bertrand, owner of a small grocery store, brought an action to contest a one year disqualification from participation in the Food Stamp Program imposed by the Department of Agriculture Food and Nutrition Service (FNS) for violations of Program regulations.[1] The district court, 552 F.Supp. 878, granted partial summary judgment for Bertrand and denied the government's motion for summary judgment, holding that the maximum penalty authorized was a thirty day disqualification. We reverse and uphold the one year sanction imposed by the FNS.[2]

### FACTS

In 1979 the FNS determined that the food stamp redemption rate at Bertrand's store was higher than that of other stores. An FNS representative visited the store and expressed concern that the high redemption rate might indicate violation of Program regulations concerning items eligible for purchase with food coupons. Mrs. Bertrand denied violations, asserting that the high redemption rate was due to an increased number of food stamp recipients shopping in the store. Subsequently, the FNS sent Mr. Bertrand a letter in October 1979, setting forth the discussion which had occurred at the visit and stating that "violations ... could lead to ... disqualification from the Food Stamp Program." Mr. Bertrand responded to the letter.

FNS then conducted an undercover investigation. On five occasions investigators purchased ineligible food and non-food items with food coupons. On four of the five occasions the items purchased included beer. Three of the sales were made by the owner's son, Tim Bertrand. The owner admitted the violations, explaining that he was on vacation at the time they occurred and contending that the violations were contrary to store policy.

### STANDARD OF REVIEW

Our task in reviewing a grant of summary judgment is identical to that of the trial court. *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 n. 1 (9th Cir. 1980). Viewing the evidence, de novo, in the light most favorable to the party against whom summary judgment was granted, we must determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Heiniger v. City of Phoenix,* 625 F.2d 842, 843 (9th Cir.1980). Where, as here, violations of Program regulations are admitted, the district court may overturn a sanction imposed by the FNS only if it is arbitrary or capricious. *See Wolf v. United States,* 662 F.2d 676, 678 (10th Cir.1981) and citations therein.

---

1. Bertrand's case was consolidated in the district court with the case of another store owner and is reported below at 552 F.Supp. 878 (D.Oregon 1982).

2. Bertrand cross appealed the district court's denial of attorneys' fees pursuant to the Equal Access to Justice Act. The issues raised on cross appeal are moot, because the government is now the prevailing party. *See* 28 U.S.C. § 2412(d)(1)(A).

## DISCUSSION

■ The FNS' imposition of sanctions is governed by an administrative regulation.[3] A one year disqualification was authorized for violations if the evidence showed it was store policy to sell conspicuous or expensive non-food items, cartons of cigarettes or alcoholic beverages in exchange for food coupons and the firm was warned of the "possibility violations were occurring and of the possible consequences of violating the regulations." 7 C.F.R. § 278.6(e)(2) (1978). An "Instruction" promulgated by the FNS defines the "policy" and "warning" criteria of the regulation. The Instruction provides that one can attribute violations to store policy when:

any or all of the following persons took an active part in the violations:

a. *The owner, spouse, sons, daughters, or other close relatives* of the owner who are regularly involved in the operation of the store.

b. *Members of management,* including a person designated as a clerk, but who is in effect running the store in the absence of the owner for extended periods of time or on a regular basis.

c. *Two or more clerks* who sell common grocery-type or major non-grocery-type ineligible items without refusal during the course of the investigation when there is a record of previous compliance action which documents that the owner or appropriate store official had been cautioned about the possibility of violations occurring in the store and the consequence of being found violating.

FNS Instruction 744–9 III(B)(1) (1980). A letter within the three years preceding the date violations occur informing a store "there are indications ... violations may be occurring" suffices as a warning. FNS Instruction 744–9 III(D) (1980).

■ The district court disregarded the Instruction, holding that it purported to amend the regulation. Other courts have held the Instruction, or substantially similar versions of it, controlling in cases where FNS sanctions were challenged. *See, e.g., Otto v. Block,* 693 F.2d 472, 474 (5th Cir. 1982); *Lawrence v. United States,* 693 F.2d 274, 277 (2d Cir.1982). We find the Instruction a reasonable interpretation of the regulation. It defines the word "policy" in a cogent manner by distinguishing situations that indicate the existence of a store policy to violate the regulations. Those situations include instances where store owners, their families, or managers participate in violations, or where more than one employee participates in sales of ineligible items without refusal. The Instruction's definition of warning also appears adequate.

■ FNS relied on the fact that a member of the owner's family, Bertrand's son, participated in the illicit sales to establish store policy pursuant to one of the criteria provided by the Instruction. This was appropriate, because the son was left in charge during Bertrand's thirty day vacation, sufficiently establishing his regular involvement in the operation of the store. *See* FNS Instruction 744–9 III(B)(1)(a) (1980). The facts of the case would also have justified a finding of store policy to commit violations under either of the other two criteria specified by the Instruction for establishing store policy. *See* FNS Instruction 744–9 III(B)(1)(b) & (c) (1980).

■ The October 1979 letter met the requirements of the Instruction and constituted ample warning to Bertrand that possible violations were occurring. The letter came after a meeting between an FNS agent and Mrs. Bertrand at which the FNS expressed concern that the store's unusually high food coupon redemption rate was indicative of Program violations, a rate Mrs. Bertrand claimed was due to change in the store's

---

**3.** The statute and administrative regulation governing the FNS' imposition of sanctions have been amended since the administrative decision in this case. *See* Pub.L. 97–253, Title I, §§ 175, 176(a), 96 Stat. 781 (1982), codified at 7 U.S.C. § 2021 (1983); 47 FR 56471 (1982), codified at 7 C.F.R. § 278.6 (1983). Our opinion is based upon the statute and regulation applicable to the FNS action before us and we express no opinion regarding the effect of the changes. Citations are to the provisions applicable to this case.

neighborhood. Contrary to the assertion of Bertrand and the district court, there is no evidence that the FNS manifested acceptance of the Bertrands' explanation.

We disagree with the district court's conclusion that the warning letter was "stale." The violations occurred in February 1981, approximately sixteen months after the warning. The Instruction provides that warning must be given no more than three years before a violation to impose a one year disqualification. FNS Instruction 744–9 III(D) (1980). This is a reasonable time period in view of the fact the entities involved are businesses who should be capable of complying with relatively simple regulations without repeated monitoring by the government.

Accordingly, imposition of a one year disqualification was not arbitrary or capricious. We reverse and remand for entry of summary judgment in favor of the government.

REVERSED and REMANDED.