**HY CHAN BANH, dba Hoa My Market,
Plaintiff-Appellee,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

No. 85–6470.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1987.

Decided April 14, 1987.

Mobley M. Milam, San Diego, Cal., for plaintiff-appellee.

Mary T. Koehmstedt, Washington, D.C., for defendant-appellant.

Before WRIGHT, FERGUSON and O'SCANNLAIN, Circuit Judges.

FERGUSON, Circuit Judge:

Defendant Food and Nutrition Service ("FNS") appeals the district court's order setting aside the FNS's decision to impose a five-year fine on plaintiff Hy Chan Banh, owner of Hoa My Market, for violating the federal food stamp program. The district court limited FNS to imposing a one-year fine. We reverse.

## I.

Plaintiff/Appellee Hy Chan Banh operates a retail grocery store, Hoa My Market ("market"), in Long Beach, California. On March 25, 1982, Banh was authorized to accept food stamps at his market in accordance with the food stamp program which is operated by the Secretary of Agriculture under the Food Stamp Act of 1977, as amended. *See* 7 U.S.C. § 2011. The food stamp program is administered for the Secretary by the Food and Nutrition Service. *See* 7 C.F.R. §§ 2.15(a)(1)(i), 2.93(a)(1)(i). Banh attended a retailer's orientation meeting on the same day he was authorized to accept food stamps at his market. At the meeting, Banh was informed of the rules and regulations regarding the food stamp program.

On July 22, 1982, a representative of the Los Angeles FNS field office visited the market and spoke with Cam Banh (defendant's sister), Thanh Banh (defendant's uncle), and later by phone with Banh himself. The representative stated that because of the market's high rate of food stamp redemption, the FNS was concerned that violations were occurring. The Banhs denied that violations were occurring and indicated that the high rate of redemption was due to the market's location, a low-income Asian-American neighborhood, and its excellent prices.

On August 3, 1982, the FNS sent a letter to Banh confirming its earlier discussion with Banh and warning Banh that violations could lead to disqualification from the Food Stamp Program and that he was responsible for violations committed by his employees.

Due to the high redemption rate of food coupons, the FNS conducted an undercover investigation of the market from January 19, 1983, through February 7, 1983. On January 19, 1983, at 7:44 p.m., an investigative aide purchased eight items with food stamps from Banh's mother. Four ineligible items [1]—soap, napkins, dishwashing detergent and toothpaste—were among the items purchased. The aide was the only person in the check-out line at the time of the purchase.

An investigative aide attempted to purchase several ineligible items, including a carton of cigarettes, on January 20, 1983, from Banh's mother. She refused to accept the food stamps for the ineligible items. One person was behind the aide in the check-out line.

On January 25, 1983, at 8:05 p.m., an aide purchased fabric softener, soup spoons, a six-pack of beer, a tea canister set and six eligible items using food stamps. One person was behind the aide in the check-out line at the time of the purchase.

On January 29, 1983, at 2:55 p.m., the market owner's sister accepted food stamps for eight items, four of which were ineligible, including a carton of cigarettes, paper plates, aluminum foil, and toothpaste, from an investigative aide who was the only person in the check-out line at the time of the sale.

On February 2, 1983, at 7:20 p.m., an aide purchased paper towels, laundry detergent, lighter fluid, a carton of cigarettes, and a cassette tape with food stamps from Banh's sister. Again, the aide was the only person in the check-out line.

Banh accepted food stamps from an investigative aide on February 7, 1983, at 7:05 p.m. The aide purchased toothpaste, aluminum foil, a six-pack of beer, laundry detergent and dishwashing liquid; one per-

---

**1.** Ineligible items include tobacco, alcoholic beverages, and nonfood items. 7 U.S.C. § 2012(g).

son was behind the aide in the check-out line.

During the investigation conducted by the FNS, a total of twenty-two ineligible items were purchased, five of which constituted cigarettes, beer, or nonfood items. The aides bought ineligible items five out of six attempted purchases. The personnel responsible for the sales included the owner, his mother, and the owner's sister, who made two such sales. An unidentified male clerk made the fifth sale.

On March 4, 1983, the FNS notified Banh that it was considering disqualifying his market from the food stamp program and requested Banh to provide information, an explanation, or evidence regarding the charges. Banh responded to the charges orally and denied that any violations had occurred. The FNS considered Banh's response and determined violations had in fact occurred. In a letter dated April 8, 1983, the FNS notified Banh that it was disqualifying the market from the food stamp program for five years.

After Banh requested administrative review, an FNS administrative review officer ("ARO") met with Banh and his attorney and later concluded that violations had occurred. Upon Banh's request, the ARO held that Banh could pay a civil money penalty in the amount of $45,283.20 (payable in 60 monthly installments of $754.72) in lieu of disqualification.[2]

The ARO notified Banh of its findings in a letter dated August 31, 1983, and later notified Banh that disqualification would take effect October 7, 1983. On October 5, 1983, Banh filed this action seeking judicial review of the FNS decision.

The case was transferred to a United States magistrate for a report and recommendation. Following trial on June 11, 1985, the magistrate issued a report. The magistrate found that the conclusions of the FNS were supported by substantial evidence with one exception. The magistrate held that the testimony of Banh, his sister, and his mother rebutted the presumption set forth in FNS Instruction 744–9 that the

violations were a matter of store practice. The Banhs testified that they may have accepted food stamps for ineligible items out of carelessness, that they all held full-time jobs elsewhere, which may have caused fatigue, and that most of the items purchased by the government were purchased within an hour of closing. They also testified that the cash register did not separate food from nonfood items, and that Banh has since purchased a new cash register. Because the five-year disqualification or commensurate fine requires a finding that the acceptance of food stamps for ineligible items is a store practice, the magistrate recommended that the disqualification be reduced to one year, or the equivalent fine.

The government filed objections to the magistrate's findings and recommendations. The district court adopted the magistrate's recommendations. The government timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

In 1982, Congress increased the penalties for food stamp violations and authorized the Secretary to disqualify a violator for "a reasonable period of time, of no less than six months nor more than five years, upon the first occasion of disqualification." 7 U.S.C. § 2021(b). The applicable regulation, 7 C.F.R. § 278.6, was amended accordingly to reflect this change in the Act. Under the regulation, disqualification periods are broken into five categories: five years, three years, one year, six months, or a warning letter if violations are too limited to warrant disqualification.

A five-year disqualification is warranted if the firm was previously advised of the possibility that violations were occurring and of possible consequences of violating the regulations and if the evidence establishes that it was "the firm's *practice* to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic

---

**2.** The ARO is permitted to substitute civil penalties if hardship would result from disqualification. *See* 7 C.F.R. § 279.8(c). The formula used to calculate penalties is set forth in 7 C.F.R. § 278.6(g).

beverages in exchange for food coupons."
7 C.F.R. § 278.6(e)(2)(i) (emphasis added).

The FNS may disqualify a firm for three years if the firm was previously advised of violations and it is the firm's *practice* to sell common nonfood items in amounts normally found in a shopping basket. 7 C.F.R. § 278.6(e)(3)(i).

Firm's practice is defined in 7 C.F.R. § 271.2 as "the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation."

A one-year disqualification is permitted under the regulations if the firm has committed violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the FNS had not previously advised the firm of the possibility that violations were occurring. 7 C.F.R. § 278.6(e)(4).

Finally, the FNS may disqualify a firm for six months if personnel sold nonfood items due to carelessness or poor supervision by the firm's ownership or management. 7 C.F.R. § 278.6(e)(5).

To determine whether violations are due to a disregard of program regulations or due to carelessness or poor supervision, the government promulgated Instruction 744–9 as a guideline to be used when applying the regulations.

### III.

The district court's review of the agency action is governed by two standards. In determining the validity of the agency action, section 2023 provides that a suit for judicial review "shall be a trial de novo." 7 U.S.C. § 2023(a). In reviewing the sanction imposed by the FNS, however, review is under the arbitrary and capricious standard. *Plaid Pantry Stores, Inc. v. United States,* 799 F.2d 560, 561 (9th Cir.1986) (per curiam). Thus, where the district court finds that violations of the · regulations were committed, it may overturn the sanction imposed by the FNS only if the sanction is arbitrary and capricious. *Bertrand v. United States,* 726 F.2d 518, 520 (9th Cir.1984).

This court reviews the district court's legal conclusions de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We review the district court's factual findings under the clearly erroneous standard. *LaDuke v. Nelson,* 762 F.2d 1318, 1321 (9th Cir.1985). Applying these standards of review, we hold that the district court erred in overturning the agency's imposition of the five-year fine.

### IV.

The government argues that the five-year disqualification was warranted under the regulations and fell within the criteria set forth in FNS Instruction 744–9.

▮ Because the validity of the FNS Instruction is still pending before this court in *Nguyen v. United States,* No. 85–3783, we refrain from applying the Instruction to this case.[3] In *Plaid Pantry,* 799 F.2d at 563, this court examined the agency determination that a violative transaction occurred without reference to Instruction 744–9. The court found that the regulations alone provided a sufficient basis for determining whether a violation existed and for imposing a penalty. Based on this court's holding in *Plaid Pantry,* we may proceed without reference to the Instruction.

Under the regulations, the FNS must establish the following criteria in order to impose a fine that is the equivalent of a five-year disqualification. It must be the firm's first sanction; the FNS must have warned the firm of possible violations and the possible consequences of the violations; and the evidence must establish that it is the firm's *practice* to sell expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages in exchange for food coupons. *See* 7 C.F.R. § 278.-6(e)(2)(i).

### A.

The magistrate found that the conclusions of the FNS were supported by sub-

---

**3.** In *Nguyen v. United States,* 792 F.2d 1500, 1503 (9th Cir.1986), the panel reached procedur-

al issues on appeal but ordered that the case be submitted to a merits panel for consideration.

stantial evidence except for the FNS's determination that the violations were a store practice. We review for clear error the lower court's factual findings concerning whether this was the firm's first sanction and whether the Banhs were warned of possible violations. *LaDuke,* 762 F.2d at 1321.

Neither party contests that the sanction imposed in this case is the market's first fine. Additionally, Banh was warned that his firm was suspected of violating the regulations. An FNS representative visited the store on July 22, 1982, talked to Cam Banh and Thanh Banh and expressed concern that violations were occurring. Later, the representative talked with Banh himself. The visit and discussion were confirmed in a letter dated August 3, 1982.

Banh claims that the warning by the FNS was inadequate because the FNS did not speak to Banh when the investigator visited the store but to Cam Banh who speaks little English and to Thanh Banh who speaks no English. However, the representative later called Banh and spoke with him concerning possible violations. Both he and Cam Banh denied that violations were occurring. They later testified that they understood the regulations.

The FNS also sent a letter to Banh confirming the earlier discussion. Banh argues that the letter warned him of the prohibitions against accepting loose five- and ten-dollar food coupons and giving five-dollar coupons as change, but did not specifically warn him about the violations for which he eventually was charged. The evidence reveals, however, that although the FNS may have placed special emphasis on violations other than the acceptance of food stamps for ineligible items, it sent a copy of the food stamp regulations to Banh and warned him generally to take care to prevent violations.

■ The FNS is often led to believe that illegal transactions are occurring because of an excessive rate of coupon redemption. The high rate of redemption may be the result of different types of violations or may be due to legitimate reasons. The regulations do not require the FNS to send out warnings that specifically enumerate the types of violations that are believed to be occurring. *See* 7 C.F.R. § 278.6(e)(2) (firm must have been advised of the possibility that violations were occurring).

■ Although we conclude that, on the facts of this case, the warning was adequate, and that the lower court was not clearly erroneous in so concluding, we must reprimand the FNS for the language used in the warning letter sent to Banh. The letter is imbued with multi-syllable language. In the future, the FNS should take care to send letters written in clear, simple English which can be understood by lay persons and, in cases such as this, by people who speak English as a second language.

### B.

The government also argues that it was the market's *practice* to accept food stamps for ineligible food items and that the lower court erred in its determination that a practice did not exist. Practice is defined as "the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation." 7 C.F.R. § 271.2.

The magistrate stated that the Banhs' testimony refuted a showing that a practice existed. It is unclear from this statement whether the magistrate, conducting de novo review of the agency action, disagreed with the factual findings concerning whether violations took place or whether, applying the arbitrary and capricious standard, it found the sanction arbitrary and capricious. In either case, we disagree.

■ First, the record does not support the magistrate's conclusion that the Banhs' testimony refuted a showing that a practice of accepting food stamps existed. The record establishes that the violations took place. The Banhs complained of carelessness near closing time, 8:00 p.m. However, one violation occurred at midday, and two others occurred between 7:00 and 7:20 p.m., at least forty minutes before closing. Banh's sister testified that she may have sold ineligible items when there was a long

check-out line and customers rushed her. Again, however, the evidence reveals that out of the six attempted purchases of ineligible items, the investigative aide was the only person in line during three of the purchases; only one other person was in the check-out line during each of the three other attempts. The Banhs also testified that the cash register did not separate food from nonfood items, which may have resulted in carelessness on their part when adding up the items. Yet, eighty percent of the customers shopping at the market received food stamps. The clerks should have presumed that food stamps would be used and separated the items accordingly. Thus, the facts support the agency's conclusion. Insofar as the magistrate may have concluded otherwise, we find that conclusion clearly erroneous.

■ Once the facts established that violations existed, the district court was restricted from overturning the sanction unless it found that the sanction was arbitrary and capricious. We cannot conclude that it was arbitrary and capricious for the agency to find that it was the market's practice to accept food stamps when food stamps were accepted for ineligible items five out of the six attempts. Four of these purchases included six-packs of beer, cartons of cigarettes, and a tea canister set, a conspicuous nonfood item. *See* 7 C.F.R. § 278.6(e)(2)(i).

### V.

The action taken by the FNS is supported by the statute and the regulations. The magistrate's review of the sanctions imposed by the FNS went beyond the arbitrary and capricious standard. The district court's order adopting the magistrate's findings is therefore REVERSED and the action is REMANDED to the district court for entry of a judgment affirming the FNS's decision.