831 F.2d 294
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DRIVE-N-SHOPPE, INC., dba Town and Country Drive-Thru,
Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 86-3861
 United States Court of Appeals, Sixth Circuit.
 October 5, 1987.
 
 Before BOYCE F. Jr. MARTIN, and BOGGS, Circuit Judges, and WISEMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Drive-N-Shoppe, Inc. appeals the district court's order affirming the Department of Agriculture's decision to disqualify one of its convenience stores (Town and Country Drive-Thru) from the Food Stamp Program for three years. We affirm.
 
 
 2
 * Town and Country Drive-Thru has participated in the Food Stamp Program since 1980. In January 1983, David J. Marshall, a representative of the Food and Nutrition ServiceS, Department of Agriculture, conducted a compliance visit with the store and spoke to the manager Ronald Wicker. Marshall stated that because of the store's high rate of food stamp redemptions, the Department of Agriculture was concerned that food stamp violations were occurring. Several weeks later, the FNS sent a certified letter to Wicker at the Town and Country Drive-Thru address confirming the meeting and warning that further noncompliance could result in the store's disqualification from the Food Stamp Program.[1] A carbon copy of the letter was sent to Dr. Edward J. Baxter, President of Drive-N-Shoppe, Inc.
 
 
 3
 When the high rate of food stamp redemptions continued, the FNS conducted an undercover investigation at Town and Country Drive-Thru. On four separate occasions between March 29 and August 15, 1985, FNS investigator James Yanatsis used food stamps to purchase ineligible items at the convenience store. The ineligible items were minor nonfood products such as laundry detergent and household cleaning supplies, none of which exceeded $10.00. On the first two occasions, the FNS official purchased the items from an unidentified male. On the last two occasions, the purchases were made from then-manager Keith Oeder.
 
 
 4
 On November 22, 1985, the FNS notified Drive-N-Shoppe, Inc. that Town and Country Drive-Thru was disqualified from participating in the Food Stamp Program for three years. After exhausting its administrative appeals, the appellant filed this action seeking judicial review of the FNS decision.
 
 
 5
 On August 25, 1986, the district court found, after a trial de novo, that the FNS investigator has purchased ineligible items with food stamps on four separate occasions.[2] The court further found that it was 'the store's practice to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket,' and that '[t]he store was previously advised of the possibility that violations were occurring and the possible consequences of violating the regulations.' With respect to the three-year disqualification, the district court concluded that the administrative action 'properly complied with the authority granted the agency under the laws and regulations' and was 'supported in both law and fact.'
 
 II
 
 6
 Appellant does not challenge the district court's factual finding that Town and Country Drive-Thru violated the Food Stamp Act and regulations on four separate occasions. Thus, the only issue on appeal is the validity of the three-year disqualification. In this circuit, the sanction imposed by the FNS is subject to 'very limited review.' Woodard v. United States, 725 F.2d 1072, 1077 (6th Cir. 1984) (citing Kulkin v. Bergland, 626 F.2d 181, 184 (1st Cir. 1980)). See Martin v. United States, 459 F.2d 300 (6th Cir.), cert. denied, 409 U.S. 878 (1972). This court's 'only reasoning task is to examine the sanction imposed in light of the administrative record to judge whether the agency properly applied the regulations, i.e., whether the sanction is 'unwarranted in law . . . or without justification in fact . . .." Woodard, 725 F.2d at 1077 (quoting Broad Street Food Market, Inc. v. United States, 720 F.2d 217, 220 (1st Cir. 1983)). See Butz v. Glover Livestock Commission Co., 411 U.S. 182, 185-89 (1973). If the agency has properly applied the regulations, our job is at an end and the sanction must be enforced. See H.R. Rep. No. 464, 95th Cong., 1st Sess. 397-98, reprinted in 1977 U.S. Code Cong. & Admin. News 1978, 2326-27.
 
 
 7
 The applicable regulations provide that a store shall be disqualified for three years if:
 
 
 8
 'it is to be the first sanction for the firm and the evidence shows that:
 
 
 9
 (1) It is the firm's practice to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the firm was previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations.'
 
 
 10
 7 C.F.R. Sec. 278.6(e)(3)(3)(i)(1986). The phrase 'firm's practice' means the 'usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation.' 7 C.F.R. Sec. 271.2 (1986). The FNS has formulated guidelines to explain the regulations. FNS Instruction 744-9 states in pertinent part that 'four clearly violative transactions involving common ineligible items . . . [establish] that it is the firm's practice to sell common ineligible items.' FNS Instruction 744-9, V. See Woodard, 725 F.2d at 1076 SInstruction 744-9, although not binding upon the court in a de novo trial, is a reasonable int.9
 
 
 11
 We find that the FNS has satisfied the regulatory requirements for imposing a three year suspension. Since it is undisputed that four violative transactions involving common ineligible items occurred at the convenience store, the FNS has established that it is the 'firm's practice' to commit such violations. The district court found that the items were purchased in amounts normally found in a shopping basket, and there is no evidence in the record that this finding is clearly erroneous. The record also supports the district court's conclusion that the store was warned of the possibility that violations were occurring and of the possible consequences of violating the regulations.
 
 
 12
 Relying on Plaid Pantry Stores, Inc. v. United States, 799 F.2d 560 (9th Cir. 1986) (per curiam), the appellant argues that the written and oral warnings received from FNS were inadequate under the regulations. In Plaid Pantry, the Ninth Circuit concluded that the warning letter sent by FNS was deficient in two respects. The warning was untimely when considered in light of the store's high turnover in personnel,[3] and it failed to identify the specific violations for which the plaintiff's corporation was eventually penalized. Similarly, the appellant argues that the warnings in this case were insufficient because they preceded the investigation by two years, during a period of time when Town and Country Drive-Thru was experiencing a high turnover of employees.
 
 
 13
 We disagree. Although Plaid Pantry gives the appellant some comfort, it is contrary to the rule in this circuit, and to the Supreme Court's teachings, that review of administrative sanctions is very limited. Woodard, 725 F.2d at 1077. See Butz v. Glover Livestock Commission Co., 411 U.S. 182, 185-89 (1973). The warnings in this case were received well within the time allotted by the FNS guidelines. FNS Instruction 744-9, IV E (warning is sufficient if received three years before first violation). See Bertrand v. United States, 726 F.2d 518, 522 (9th Cir. 1984) (three-year warning is a 'reasonable time period'; warning letter sent sixteen months before violations occurred is sufficient notice of food stamp violations).[4] To the extent appellant contends that the warning letter was not specific enough, we agree with the recent decision of the Ninth Circuit that a warning will be sufficient if the FNS has 'sent a copy of the food stamp regulations to [the plaintiff] and warned him generally to take care to prevent violations.' Hy Chan Banh v. United States, 814 F.2d 1358, 1362 (9th Cir. 1987). The FNS took such action in this case.
 
 III
 
 14
 The FNS sanction is authorized by the regulations promulgated under the Food Stamp Act. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The letter contained a copy of the Food Stamp Program regulations
 
 
 [2]
 According to the district court, the appellant did not deny 'that each of the four violations alleged by the agency to have occurred as a result of its investigation did occur.'
 
 
 [3]
 The plaintiff in Plaid Pantry received a written warning approximately one year before the FNS conducted its initial undercover investigation
 
 
 [4]
 We note that the Plaid Pantry court examined the FNS warning without reference to Instruction 744-9. Plaid Pantry, 799 F.2d at 563. Accord Hy Chan Banh v. United States, 814 F.2d 1358, 1361 (9th Cir. 1987)