860 F.2d 858
 James SIMS, Owner of Sims Enterprises, Appellee,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE FOOD & NUTRITION
SERVICE, Appellant.
United States of America.
James SIMS, Owner of Sims Enterprises, Appellant,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE FOOD & NUTRITION
SERVICE, Appellee.
United States of America.
 Nos. 88-1381, 88-1454.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 15, 1988.
Decided Nov. 2, 1988.
 
 Rick Richmond, Washington, D.C., for appellant.
 L.T. Simes, II, West Helena, Ark., for appellee.
 Before JOHN R. GIBSON, Circuit Judge, and BRIGHT and HENLEY, Senior Circuit Judges.
 HENLEY, Senior Circuit Judge.
 
 
 1
 James Sims owns and operates a grocery store in Marvell, Arkansas. He appeals his store's disqualification from participation in the food stamp program by the United States Food and Nutrition Service (the FNS) for alleged violations of the Food Stamp Act, 7 U.S.C. Secs. 2011--2030. The FNS imposed a three year disqualification[1] on Sims after it determined that his store had a practice of accepting food stamps for nonfood items in violation of 7 U.S.C. Sec. 2021.[2]
 
 
 2
 The district court found that the agency's action was arbitrary and capricious on four different grounds: (1) the FNS did not make a finding regarding the firm's intent to violate the regulations; (2) a proper warning was not given in accord with the FNS guidelines; (3) the FNS used a case to justify the three year penalty that was not comparable to Sims' case; and (4) the FNS did not follow its guidelines in computing the ratio of eligible and ineligible items sold in order to establish whether "clear violations" occurred. 677 F.Supp. at 1396-1400. The district court further determined that the evidence did not support the FNS's conclusion that Sims had a practice of violating the Act and regulations. The court reversed and vacated the three year disqualification, and ordered the FNS to send Sims a warning letter pursuant to 7 C.F.R. Sec. 278.6(e)(7). Id. at 1400.
 
 
 3
 The FNS appeals the district court's finding that it acted arbitrarily and capriciously. The FNS strenuously objects to the district court's repeated reference to its guidelines as "regulations," and to the court's treatment of the guidelines as having the force and effect of law binding on the FNS.[3] While in general we find the FNS's contentions in this respect to have merit, significant departures from the guidelines might well indicate arbitrary or capricious action. See Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977) (degree of deference given to administrative interpretations based on such factors as the timing and consistency of agency's position). However, we find no significant departures here.
 
 
 4
 First, we note that the regulations do not require the FNS to explicitly find that the firm "intended" to violate the law. They merely require the agency to consider any evidence showing the firm's intent to violate the regulations. 7 C.F.R. Sec. 278.6(d). The ultimate finding which the regulations require in order to support a three year disqualification is whether the firm had a "practice" of selling nonfood items for stamps. 7 C.F.R. Sec. 278.6(e)(3)(i). Thus, while evidence of intent must be considered in order to determine whether a practice exists, nothing in the regulation requires the FNS to expressly make a finding of intent, separate and apart from the required finding of a "practice." The agency appears to have considered all the evidence before it, and did make the "practice" finding. The district court erred in requiring more.
 
 
 5
 Next, the district court found that the written warning sent by FNS pursuant to FNS Handbook 318 Sec. 750(B) was invalid because it listed four possible types of violations, rather than focusing solely on the sale of nonfood items for stamps. The court relied on two district court cases which held that the warnings were invalid because they listed different violations than those upon which the disqualifications were ultimately based. Plaid Pantry Stores, Inc. v. United States, 612 F.Supp. 680, 687 (D.Or.1985), aff'd, 799 F.2d 560 (9th Cir.1986); Lamboy v. United States, 604 F.Supp. 490, 494 (E.D.Pa.1985). In this case, the warning letter stated that a Food Program Specialist, in a visit to Sims' store, had indicated "concern" that the store might be in violation of the Act and further stated that the Specialist had reviewed the relevant regulations, "with special emphasis on those which prohibit sales of ineligible items." The warning in this case was much more specific than a warning approved in a recent Ninth Circuit case, in which the FNS sent a copy of the food stamp regulations and a general warning to take care to prevent violations. Hy Chan Banh v. United States, 814 F.2d 1358, 1360 (9th Cir.1987).[4] Nor do we agree with the district court that the warning letter's use of the word "concern" fails to satisfy the guidelines' requirement that the letter refer to the FNS agent's "suspicions." The difference in meaning, if any, is minimal in this context, and does not demonstrate arbitrary or capricious behavior on the part of the FNS. The evidence does not show, and Sims does not contend, that he did not understand the contents of the warning letter and, as a matter of law, we find that the warning sufficiently apprised Sims of the violation with which he was ultimately charged.
 
 
 6
 FNS also challenges the district court's conclusion that it used an incomparable case to justify the three-year penalty. See FNS Handbook 318 Sec. 1210(d). We agree with the district court insofar as it found that the comparable case involved facts decidedly more egregious than those in Sims' case. However, the FNS had some difficulty with producing a comparable case inasmuch as the regulations were amended in 1982 to increase the severity of the sanctions. Joseph Turecky, Chief of Compliance Management of FNS for the Southwest Region, testified that a violation which presently warrants a three year sanction would formerly have incurred one of six months' duration, and that consequently few comparable cases are available. In light of this difficulty, we cannot conclude that the comparable case upon which the FNS relied evidences arbitrary or capricious action. Moreover, the district court's analysis ignores the regulations' requirement of a three-year penalty once the Agency finds a practice of violating the Act's proscription against selling ineligible items.
 
 
 7
 Finally, the district court faulted FNS for the manner in which it calculated the ratio of ineligible-to-eligible items in making its determination that "clear violations" occurred. The FNS Handbook provides that, in the absence of a sale of "major ineligible items" such as tobacco or liquor, and in the absence of comments by the clerk indicating awareness that nonfood items are involved, "a transaction must consist of ineligible items sold comprising not less than 30 per cent of the total number of items purchased" before a "clear violation" will be found. FNS Handbook 318 Sec. 1221(A)(2)(b). Because "items of the same kind are often sold in combination ... ineligible items of the same size and brand, sold in the same transaction, shall be counted as one item." Id. The FNS calculated the percentage of ineligible items purchased by its investigator by counting eligible, as well as ineligible, items of the same size and brand as one item. This resulted in percentages of ineligible items exceeding thirty per cent. The district court noted that the guideline does not expressly apply the "one item" treatment to eligible items. The court therefore recalculated the percentages by counting each eligible item, including those of the same size and brand, as separate items, with resulting percentages of less than thirty per cent for ineligible items.[5]
 
 
 8
 FNS argues that it is entitled to calculate all the items in the same manner, and we agree. We note that the guidelines containing the thirty per cent rule were promulgated by the FNS itself, and we see no reason not to defer to the agency's interpretation of its own guidelines in this instance. Cf. Doe v. Department of Transp., 412 F.2d 674, 678 (8th Cir.1969) (courts normally defer to the agency's expertise in construing the statute or regulation it is charged with administering). There is nothing inherently irrational or peculiar about counting both eligible and ineligible items in the same way. No evidence was adduced to show that the agency deviated from its normal method of calculating the ratios in this case, and consequently we cannot find arbitrary or capricious action in the way it performed those calculations.
 
 
 9
 In summary, we reverse the district court's conclusion that the FNS acted arbitrarily or capriciously. However, that does not end the matter, as the district court also concluded that the record was insufficient to demonstrate a practice of violating the Act.
 
 
 10
 The Food Stamp Act provides that issues of fact are to be tried de novo in the district court, which is to "determine the validity of the questioned administrative action in issue." 7 U.S.C. Sec. 2023(a). The Act's de novo review provides a wider scope of review than the "substantial evidence" standard found in the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A). Ibrahim v. United States, 834 F.2d 52, 53 (2d Cir.1987); Modica v. United States, 518 F.2d 374, 376 (5th Cir.1975). "As a result, the district court 'must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings.' " Ibrahim, 834 F.2d at 53-54 (quoting Modica, 518 F.2d at 376). The FNS Guidelines, while helpful in interpreting the law and regulations, are not binding on the court in making its de novo review. Woodard v. United States, 725 F.2d 1072, 1076 (6th Cir.1984). The FNS argues on appeal that the only issue presented to us is whether the penalty was arbitrary and capricious. However, the district court distinctly found that the record evidence was insufficient to establish that Sims had a practice of violating the regulations. 677 F.Supp. at 1400.
 
 
 11
 The record fairly reveals that some violative sales undoubtedly occurred; however, we will not overturn the trial court's ultimate factual finding unless we find it clearly erroneous. Fed.R.Civ.P. 52(a); Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960); Smith v. Commissioner, 608 F.2d 321, 323 (8th Cir.1979) (per curiam). At trial, both Sims and his store clerk vigorously denied that it was their practice to accept food stamps as payment for nonfood items, and asserted that the store had a policy against such transactions. The district court was entitled to believe this testimony, and we must give great deference to the district court's opportunity to weigh the evidence and to observe the demeanor of the witnesses at trial. Rule 52(a); Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). We may not reverse the district court "simply because ... we would have weighed the evidence differently or disagree as to where it preponderates." Powell v. Missouri State Highway & Transp. Dep't., 822 F.2d 798, 800 (8th Cir.1987). In this case, although there was evidence to the contrary, we are not "left with the definite and firm conviction that a mistake has been committed." Anderson, 470 U.S. at 573, 105 S.Ct. at 1511 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)), and accordingly we affirm the district court's determination that Sims did not have a practice of violating the Food Stamp Act or regulations.
 
 
 12
 We still must determine, however, whether the district court afforded the proper remedy. FNS contends that the district court erred in substituting a warning letter for the three year sanction. FNS maintains that the record reflects that Sims sent a letter to FNS admitting violations, but contending that they were the result of carelessness and poor supervision. By definition, that admission brings the case within the provisions of 7 C.F.R. Sec. 278.6(e)(5), which provides for a six month period of disqualification for violations "due to carelessness or poor supervision by the firm's ownership or management." Consequently, we hold that the district court should have reduced the penalty to a six month disqualification. See 7 C.F.R. Sec. 279.10(c) (court may reduce penalty in accordance with the law and evidence).
 
 
 13
 However, the record reflects that, prior to obtaining a stay of his disqualification from the district court, Sims was disqualified from participation in the food stamp program for a period of nine months. Thus, he has already more than satisfied the six month sanction, and should be permitted to seek reinstatement to the food stamp program pursuant to the applicable regulations.
 
 
 14
 In conclusion, we reverse the district court's determination that the FNS acted arbitrarily and capriciously; affirm the court's finding that Sims did not have a practice of violating the Act or regulations; and reverse the district court's choice of a remedy and remand for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 7 U.S.C. Sec. 2021 provides for civil money penalties and disqualification of food stores for food stamp violations. Subsection (a) of that section provides that a store may be disqualified for a specified period, or if disqualification would work a hardship on food stamp households, that a civil money penalty of up to $10,000.00 for each violation may be imposed. In this case, the FNS determined that disqualification would not work a hardship because other stores in the vicinity of Sims' store could serve the needs of food stamp households. This determination is not an issue on appeal, and we need not address it
 Section 2021(b)(1) provides for disqualification of six months to five years the first time disqualification is imposed. The regulations provide that the FNS must disqualify a firm for three years if it is the first sanction to be imposed; the firm has a practice of committing violations such as the sale of nonfood items for food stamps; and the firm has been warned of the possibility violations occurred and of the possible consequences. 7 C.F.R. Sec. 278.6(e)(3)(1) (1988).
 A six month penalty is prescribed for the first sanction if personnel of the firm have sold nonfood items due to carelessness or poor supervision by the firm's ownership or management. 7 C.F.R. Sec. 278.6(e)(5). Finally, if the violations are too limited to warrant a disqualification, the FNS may send a warning letter. Id. Sec. 278(e)(7).
 
 
 [2]
 The facts of the case are more fully set forth in the district court's opinion, reported at 677 F.Supp. 1392 (E.D.Ark.1988)
 
 
 [3]
 The guidelines appear in FNS Handbook No. 318
 
 
 [4]
 We express no opinion as to whether we would approve the warning involved in Hy Chan Banh
 
 
 [5]
 For example, the FNS counted three cans of pork and beans as one eligible item, and two five-ounce bars of Dial Soap as one ineligible item. The district court counted the pork and beans as three items, and the soap as one item. The obvious result is a lower percentage of ineligible items