**PHANY POENG, dba 97 Supermarket,
Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 01–CV–1338W(NLS).

United States District Court,
S.D. California.

Oct. 18, 2001.

Patrick K. O'Toole, Cindy Cipriani, U.S. Attorneys Office Southern Dist. of California, Civ. Div., San Diego, CA, for Defendant.

Jesse G. Quinsaat, Law Offices of Jesse G. Quinsaat, San Diego, CA, for Plaintiff.

## ORDER DENYING PLAINTIFF'S MOTION FOR STAY OF ADMINISTRATIVE ACTION

WHELAN, District Judge.

Plaintiff Phany Poeng ("Plaintiff") moves to stay the Food and Nutrition Service's ("FNS") administrative proceedings pursuant to 7 U.S.C. § 2023(a)(17) and 7 C.F.R. § 279.10(d). Defendant United States of America ("Defendant") opposes. All parties are represented by counsel. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1).

### I. BACKGROUND

Plaintiff is the sole proprietor and owner of a retail food store known as 97 Supermarket. Since March 1999 Plaintiff has participated as an authorized retailer in the United States Department of Agriculture ("USDA") Food Stamp Program (hereinafter "program") whereby Plaintiff accepts food stamps as payment for eligible food items.

In March 2000 Plaintiff received a letter from USDA representative Michael Guthrie ("Mr. Guthrie") informing Plaintiff that his authorization would be suspended for six months. Mr. Guthrie's letter charged that Plaintiff's store clerks wrongfully accepted food stamps for ineligible items on five of seven occasions during a 10-week investigation. The ineligible items included a cooking pot, mortar and pestle, a tiered server, dishwashing liquid, soap and bathroom tissue.

On March 19, 2000 Plaintiff received a certified letter from Mr. Guthrie reiterating the violations and informing Plaintiff that 97 Supermarket would be disqualified from the program. Plaintiff timely filed his request for administrative review. On June 21, 2001 Plaintiff's request was denied. This litigation followed. Plaintiff now moves to stay the administrative action in its entirety pending this Court's judicial review of Plaintiff's disqualification from the program.

### II. LEGAL STANDARD

■ A retail food store disqualified or fined under the Food Stamp Act may bring an action for judicial review challenging the penalty by filing a complaint against the United States in federal district court. *See Kim v. United States,* 121 F.3d 1269, 1271–72 (9th Cir.1997); *see also* 7 U.S.C. §§ 2021(c), 2023(a)(13). The district court shall determine the validity of the penalty in a trial *de novo. See Kim,* 121 F.3d at 1272; *see also* 7 U.S.C. § 2023(a)(15). The burden of proof is "placed upon the store owner to prove by a preponderance of the evidence that the violations did not occur." *Kim,* 121 F.3d

at 1272. Alternatively, the store owner may argue that the sanction imposed was arbitrary and capricious. *See Wong v. United States*, 859 F.2d 129, 132 (9th Cir. 1988) (holding that "[o]nce the district court finds that violations were committed, it may not overturn the sanction unless it finds that the sanction was arbitrary and capricious."); *Hy Chan Banh v. United States*, 814 F.2d 1358, 1363 (9th Cir.1987) (concluding that it was not arbitrary and capricious to sanction an agency that accepted food stamps for ineligible items on five of six occasions); *Plaid Pantry Stores, Inc. v. United States*, 799 F.2d 560, 563, 567 (9th Cir.1986) (holding that the sanction imposed was arbitrary and capricious even though the plaintiff store did not dispute that sales of ineligible items occurred); *Bertrand v. United States*, 726 F.2d 518, 520 (9th Cir.1984) (holding that the district court may overturn a FNS sanction only if it is arbitrary or capricious).

During the pendency of judicial review, the administrative action shall remain in full force and effect. *See* 7 U.S.C. § 2023(a)(17). However, the district court may temporarily stay such administrative action if it determines that the aggrieved party will suffer irreparable injury and is likely to prevail on the merits of his case. *See id.; see also* 7 C.F.R. § 279.10(d).

**III.** *DISCUSSION*

On July 23, 2001 Plaintiff commenced this action to obtain judicial review. Plaintiff now moves to stay the administrative action contending that Plaintiff will likely prevail on the merits and suffer irreparable injury. The Court shall separately examine each issue in turn.

**A.** *LIKELIHOOD OF SUCCESS ON THE MERITS*

The Court first considers whether Plaintiff is likely to succeed on the merits of his claim. In so doing, the Court examines the governing sections of the Food Stamp Act.

1. *THE PARAMETERS OF THE FOOD STAMP ACT*

■ Congress designed the Food Stamp Program to alleviate hunger and malnutrition among low income households by augmenting their ability to purchase food. 7 U.S.C. §§ 2011, 2013(a). Food stamps may only be redeemed in exchange for food items from participating retail food stores. 7 U.S.C. § 2013(a). Food stamps may not be redeemed for ineligible items or accepted in payment for eligible food sold on credit. 7 C.F.R. § 278.2(f). The FNS will not authorize a store's program participation until the store owners certify that they have read and are familiar with the governing statutes and regulations. Authorized stores which accept food stamps in violation of program guidelines may be disqualified from further participation. Violators are alternatively subject to civil penalties if disqualification would cause undue hardship to food stamp households relying on the allegedly violating store. *See* 7 U.S.C. § 2021(a); 7 C.F.R. § 278.6(a).

■ The FNS's disqualification of a store is subject to judicial review by trial *de novo. See,* 7 U.S.C. §§ 2021(c), 2023(a)(15); 7 C.F.R. § 279.10(a); *Kim,* 121 F.3d at 1272. The burden of proof falls on the plaintiff store to establish by a preponderance of the evidence that the violations did not occur. *See Kim,* 121 F.3d at 1272. Once a violation is established, the Court's only remaining task is to review the appropriateness of the sanction imposed using an arbitrary and capricious standard. *See Wong,* 859 F.2d at 132; *Banh,* 814 F.2d at 1363; *Plaid Pantry Stores, Inc.,* 799 F.2d at 563; *Bertrand,* 726 F.2d at 520.

### 2. PLAINTIFF'S UNDISPUTED VIOLATIONS

■ Defendant first argues that Plaintiff fails to dispute that his store sold ineligible items. According to Defendant, Plaintiff merely states that his violations "are minor in scale and occurred over a short period of time." (*Def.'s Opp'n* at 5.) Plaintiff insists that (1) his violations were unintentional and de minimis, (2) he never received the sanction of a written warning as required by 7 C.F.R. § 278.6(d)(2), (3) he has taken corrective measures to ensure compliance with the regulations and (4) he was never given an opportunity to pay a fine in lieu of disqualification.

Notably, none of Plaintiff's arguments expressly deny that violations occurred. Indeed, Plaintiff candidly admits that "violations did occur." (*Pl.'s Mem. of P. & A.* at 6.) Accordingly, this Court finds that violations likely did occur [1] and the Court shall limit its inquiry to whether Plaintiff's disqualification is arbitrary and capricious. *See Wong,* 859 F.2d at 132; *Banh,* 814 F.2d at 1363; *Plaid Pantry Stores, Inc.,* 799 F.2d at 563; *Bertrand,* 726 F.2d at 520.

### 3. THE SIX MONTH DISQUALIFICATION WAS REASONABLE

■ Plaintiff next argues that disqualification is inappropriate because he never received a written warning. Plaintiff cites 7 C.F.R. § 278.6(d)(2) for the proposition that a written warning must precede disqualification. Alternatively, Plaintiff urges the Court to imply a warning requirement from 7 C.F.R. § 278.6(e). Defendant counters that the regulations do not require a written warning. Defendant concedes that a warning letter is appropriate where violations are too limited to warrant a disqualification. However, Defendant argues that Plaintiff's "significant pattern of violations and major ineligibles for which food stamps were redeemed ... cannot be characterized as limited." (*Def.'s Opp'n* at 7.)

The Court agrees.

The regulations do not require written notice prior to disqualification. In weighing a disqualification decision, the FNS is to consider: "(1) [t]he nature and scope of the violations committed by personnel of the firm, (2) any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) any other evidence that shows the firm's intent to violate the regulations." 7 C.F.R. § 278.6(d). While these regulations require FNS consideration of whether a prior warning was issued, there is no mandatory language requiring express written notice.[2] *See id.* While it is true that a written warning may be an appropriate sanction where the store's violations are too limited to warrant disqualification, that is clearly not what occurred in this case insofar as Plaintiff violated program regulations on five separate occasions. *See* 7 C.F.R. § 278.6(e)(7); *see also Plaid Pantry Stores, Inc. v. United States,* 612

---

1. The Court need not address Plaintiff's first argument that his violations were unintentional and de minimis. Such a contention is clearly frivolous and unsupported by the record.

2. The Court further rejects Plaintiff's contention that this Court should *imply* a written warning requirement from 7 C.F.R. § 278.6(e). Specifically, Plaintiff suggests that § 278.6(e)'s language that "a warning letter shall not be considered to be a sanc-tion" implies that a warning letter should precede disqualification. 7 C.F.R. § 278.6(e). The Court disagrees. A thorough reading of the regulations reveals that the FNS may disqualify a store without first issuing a written warning. *See* 7 C.F.R. § 278.6(e)(4) (providing that the FNS shall disqualify a store in certain circumstances even though the FNS "had not previously advised the firm of the possibility that violations were occurring and of the possible consequences of violating the regulations").

F.Supp. 680, 688 (D.Or.1985), *aff'd,* 799 F.2d 560 (9th Cir.1986).

Furthermore, Plaintiff cannot argue that he adopted adequate measures to secure compliance with food stamp regulations. Plaintiff fails to provide evidence that he provided adequate training. Instead, Plaintiff urges that "he was preoccupied with being competitive and was initially plagued by theft problems which arose from both employees and customers." (*Pl.'s Mem. of P. & A.* at 5.) Although Plaintiff indicates that he monitored his employees, three of his five employees violated the regulations over a two month period. Plaintiff urges that his violations do not constitute the more egregious regulatory violations.[3] The Court respectfully disagrees.

Plaintiff committed clear regulatory violations when his clerks accepted food stamps for major ineligible items. Plaintiff's clerks illegally sold conspicuous ineligibles include a cooking pot, mortar and pestle and a tiered server. In addition, one of Plaintiff's clerks committed a clear regulatory violation when she sold common nonfood items including dishwashing liquid, soap and bathroom tissue. Furthermore, there is no evidence that Plaintiff terminated these recalcitrant employees upon discovery of their wrongdoing.

In light of the collective circumstances, the Court finds Plaintiff's six month disqualification was neither arbitrary nor capricious.[4]

**4. AN ALTERNATIVE CIVIL MONETARY PENALTY IS UNWARRANTED**

Finally, the Court addresses Plaintiff's contention that he should be permitted to pay a monetary fine in lieu of disqualification. While the FNS has discretion to substitute a civil money penalty for disqualification, this exception to the general rule requires that the store sell a substantial variety of staple food items and that the store's disqualification would cause hardship to participating food stamp households. *See* 7 C.F.R. § 278.6(f)(1); *see also Plaid Pantry Stores, Inc.,* 799 F.2d at 562 (explaining that a store's disqualification would cause hardship to food stamp households if "there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices"). No such circumstances arise here.

Plaintiff first argues that disqualification would cause undue hardship to Cambodian food stamp households who rely on his store. Plaintiff estimates that more than half of his customers are Cambodian and attributes their patronage to Plaintiff's employees' ability to speak Cambodian. Defendant counters that Cambodian food stamp households will not suffer hardship given the number and nature of comparable participating food stores in the area.

Plaintiff correctly observes that the FNS must "ensure that a sufficient number of authorized food retailers have agreed to participate . . . to ensure that eligible food stamp households will not suf-

---

**3.** Plaintiff directs the Court to one clerk's refusal to issue cash in exchange for food stamps. Plaintiff also contends that he was not cited for other serious violations, such as the sale of health-harmful products. However, these acts show nothing more than occasional efforts to comply with regulations that Plaintiff already had a duty to follow and do not excuse Plaintiff's five separate program violations.

**4.** While the Court looks favorably upon Plaintiff's efforts to take corrective measures to ensure compliance with the regulations, Plaintiff cannot now offer these efforts to avoid the sanction authorized by 7 C.F.R. § 278.6(e)(5).

fer a significant reduction in their choice of retail food stores and that a sufficient number of retail food stores serving minority language populations are participating." 7 C.F.R. § 274.12(h)(3). However, neither party disputes, nor could they, that at least two additional food stores are located within walking distance of 97 Supermarket. Both of these competing stores offer comparable product variety, prices, ethnic items and store hours.

The Court agrees with Defendant that these authorized stores provide sufficient protection to participating Cambodian food stamp households in the area. *See Plaid Pantry Stores, Inc.,* 799 F.2d at 562; 7 C.F.R. § 278.6(f)(1). Although the competing stores' employees may not speak Cambodian, the FNS is not required to guarantee the existence of an authorized store that caters to food stamp participants of every minority language. Moreover, the Court is hard-pressed to identify a reason why a food stamp participant would necessarily have to converse with a cashier at the time of purchase. In sum, the Court finds that sufficient alternative stores are present in the area such that Plaintiff is not entitled to an alternative monetary penalty.

Based on the foregoing, the Court concludes that the sanction imposed was neither arbitrary nor capricious. *See Wong,* 859 F.2d at 132; *Banh,* 814 F.2d at 1363; *Plaid Pantry Stores, Inc.,* 799 F.2d at 563; *Bertrand,* 726 F.2d at 520. Moreover, Plaintiff has failed to establish a likelihood of success on the merits such that injunctive relief is not warranted at this time. *See* 7 U.S.C. § 2023(a)(17).

#### B. *IRREPARABLE INJURY*

■ The Court next addresses Plaintiff's contention that he will suffer irreparable injury if a stay is not issued. The Food Stamp Act is silent as to the standard a plaintiff must satisfy to establish irreparable injury. Thus, the Court applies the traditional standard required to obtain a preliminary injunction. *See, e.g., Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir.1999) (outlining factors courts should consider when examining "the possibility of irreparable injury").

Plaintiff argues that both his store and food stamp recipients will suffer irreparable injury unless the Court stays enforcement of the six month disqualification. However, this Court has already determined that food stamp recipients will not suffer irreparable injury as their nutritional needs will be satisfied at comparable and nearby authorized food stores.

■ In addition, the traditional irreparable injury standard examines the possibility of injury to *Plaintiff* and not third parties. *See, e.g., Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200 (9th Cir. 1980) (examining the possibility of irreparable injury to the plaintiff if preliminary relief is not granted). As such, the Court must limit its inquiry to whether Plaintiff will suffer irreparable injury absent a stay.

Plaintiff urges that more than half of his customers use food stamps and would be forced to shop elsewhere. Plaintiff contends that losing half his customer base will force him out of business. Defendant counters that loss of money or business does not constitute irreparable injury. Furthermore, Defendant correctly notes Plaintiff's "fail[ure] to provide documentary financial evidence of significant harm, even though he has been conducting business for two months without authorization and could have easily provided such figures." (*Def.'s Opp'n* at 9.)

■ The Court agrees that monetary injuries are generally not considered irreparable. *See Los Angeles Memorial Coliseum Commission,* 634 F.2d at 1202 (stating

that the temporary loss of income, ultimately to be recovered, does not generally constitute irreparable injury). However, the Court must still consider Plaintiff's contention that he will be forced out of business absent a stay. *See id.* at 1203 ("[t]he threat of being driven out of business is sufficient to establish irreparable harm.").

The majority of district courts addressing this issue have concluded that a loss of at least thirty percent of a plaintiff's business can constitute irreparable harm. *See Kim v. United States,* 822 F.Supp. 107, 110 (E.D.N.Y.1993) (finding that a loss of thirty percent of the plaintiff's receipts coupled with the inevitable closing of the plaintiff's store constitutes irreparable harm); *De La Nueces v. United States,* 778 F.Supp. 191, 194 (S.D.N.Y.1991) ("[t]he allegation that plaintiff will lose fifty percent of his business, and may have to close his doors as a result, is sufficient to convince the [c]ourt that the plaintiff will suffer irreparable injury if the preliminary injunctions are not granted."); *Ibrahim v. United States,* 650 F.Supp. 163, 165–66 (N.D.N.Y.1987) (finding that the plaintiff derived thirty percent of his income from food stamps and would probably lose his business if disqualified from the program), *aff'd* 834 F.2d 52 (2d. Cir.1987); *Barbosa v. United States,* 633 F.Supp. 16, 18 (E.D.Wis.1986) (finding that the plaintiff would suffer irreparable injury by an unstated percentage loss of revenue from food stamp customers); *Turnage v. United States,* 639 F.Supp. 228, 231 (E.D.N.C. 1986) (finding that an unstated percentage loss to the plaintiff may very likely force the plaintiff to close his business). *Compare Gurtzweiler v. United States,* 601 F.Supp. 883, 885 (N.D.Ohio 1985) (requiring that the plaintiff make a showing beyond the customary economic loss of food stamp business to prove irreparable harm).

While the Court generally agrees with the aforementioned case authority, Plaintiff herein has not established, via objective and reasonable documentary evidence, that Plaintiff will necessarily lose fifty percent of his business while barred from the food stamp program. Indeed, the fact that Plaintiff continues to operate his store almost three months after the sanctions were imposed suggests the contrary. Plaintiff further concedes that, before food stamp benefits were authorized, his monthly gross receipts were sufficient to cover his operating expenses. (*See Pl.'s Mem. of P. & A.* at 19.) Accordingly, the Court finds that Plaintiff has not established a likelihood of irreparable harm. Injunctive relief is not warranted at this time.

**IV. CONCLUSION AND ORDER**

In light of the foregoing, the Court **DENIES** Plaintiff's motion for a stay of the administrative action. (Doc. No. 12–1.)

**IT IS SO ORDERED.**